## IN RE BOULTER.

CRIMINAL LAW—PROSECUTION BY INFORMATION—DUE PROCESS OF
  LAW—PROBABLE CAUSE SUPPORTED BY AFFIDAVIT—STATUTES
  —SUBJECT OF LEGISLATIVE ENACTMENT.

1. Prosecution for crime by information is "due process of
   law."

2. Under the constitutional provision, authorizing the legis-
   lature to "change, regulate or abolish" the grand jury
   system, that system may be retained, together with a pro-
   vision for accusation by information; and the statute pro-
   viding for such dual system is not unconstitutional for that
   reason. (L. 1890-91, Ch. 59.)

3. The statute is not unconstitutional as embracing more than
   one subject, the title thereof specifying that it is an act
   to change and regulate the grand jury system and pro-
   viding for prosecution for information. But one subject is
   contained in the act, viz.: the accusation of persons ac-
   cused of crime.

4. Because there are redundant expressions or needless de-
   tails of the objects of the act or subjects of legislation in
   the title, the act is not invalidated thereby, so long as the
   subjects of legislation are congruous, cognate or germane,
   and in furtherance of the general subject of the enactment,
   even though the act may authorize many things of a di-
   verse nature to be done.

5. Prior laws may be amended by implication by new legisla-
   tion upon the subject without specific reference to such
   existing laws. The constitutional inhibition against amend-
   ments of statutes without re-enacting them at length has
   no application to amendments or repeals by implication
   by means of entirely new enactments.

6. The constitutional guaranty that no warrant shall issue
   but upon probable cause supported by affidavit is not in-
   vaded by an information verified by the prosecuting attor-
   ney upon information and belief, where such information
   is based upon a preliminary examination supported by a
   complaint verified positively, and resulting in the magis-
   trate holding the accused to answer for the crime charged
   in the information.

7.   The practice of bringing the prisoner before the Supreme
     Court in a habeas corpus proceeding is not commended,
     and such practice must not be considered as a precedent to
     be followed.

[Decided May 29, 1895.   Information filed in District Court De-
cember 5, 1894.]

HABEAS CORPUS.

On April 20, 1895, Collingwood Boulter, otherwise called
Charles Boulter, applied to the justices of the Supreme Court
for a writ of habeas corpus, alleging that he was unlawfully
confined in the county jail of Laramie County by the sheriff
of said county upon a judgment of conviction for the crime of
manslaughter. The grounds upon which such imprisonment
was claimed to be illegal are set forth in the opinion. An
order for the writ was made by one of the justices, command-
ing that the sheriff show the cause of such detention. The
writ was issued, and the sheriff filed an answer, the substance
of which is also recited in the opinion. The cause was heard
upon a demurrer to such answer.

*Ralph E. Esteb,* for petitioner.

Informations must be based upon affidavits which show
probable cause arising from facts within the knowledge of the
parties making them; the mere belief of the affiant is insuffi-
cient. (U. S. v. Thureaud, 20 Fed., 621; Bly v. Tompkins,
2 Abb. Pr., 468; Vannata v. State, 31 Ind., 210; State v.
Gleason, 32 Kan., 245; Skinner v. Wilhelm, 63 Mich., 568;
State v. Spencer, 23 Kan., 119; U. S. v. Smith, 40 Fed., 755;
Lustig v. People, 18 Colo., 217; Myers v. People, 67 Ill., 303;
Johnson v. State, 17 Tex. App., 230; Connor v. Com., 3 Binn.,
38; Atchison v. Bartolow, 4 Kan., 124; Arch. Cr. Pl. & Pr.,
76; Thompson v. Higginbottom, 18 Kan., 42; Rex v. Bull, 1
Wils., 93; Rex v. Willett, 6 Term. R., 294; Rex v. Chilbers, 2
Chit., 163; Rex v. Williamson, 3 B. & A., 582; State v. Mann,
5 Ired L., 45; State v. J. H., 1 Tyler (Vt.), 444; Ex parte
Burford, 3 Cranch, 447; Elsee v. Smith, 1 Dowl. & R., 97.)
Any legislative act embracing more than one subject is uncon-
stitutional and void. (Const., Art. 3, sec. 24; People v. Col-

lins, 3 Mich., 343; Skinner v. Wilhelm, supra; People v. Mehaney, 13 Mich., 482; Myers v. People, supra; Miller v. Hurford, 13 Neb., 13; Ives vs. Norris, id., 253; Montclair v. Ramsdell, 107 U. S., 147; State v. Lancaster Co., 17 Neb., 85; Cooley's Const. Lim., 147 and 177; State v. Co. Judge, 2 Ia., 282; People v. Denahy, 20 Mich., 349; Stewart v. Society, 24 id., 44; In re. Div. Howard Co., 15 Kan., 195; Antonio v. Gould, 54 Tex., 49; State v. McCracken, 42 Tex., 383.) Chapter 59, L. 1890-91 is void because it violates Sec. 26 of Art. 3 of the constitution, because it amends, repeals and extends many sections of prior laws, which are not re-enacted at length. So long as the grand jury system is at all retained, no person can be proceeded against criminally except by indictment. (Const., Art. 1, Sec. 13; Arts. 5 & 14, Amendments U. S. Const.; In re Lowrie, 8 Colo., 511; Jones v. Robbins, 8 Gray, 342; 2 Kent, 12; Wharton's Cr. L., sec. 452; Story on Const. Constr., secs. 1779, 1785; 3 Wilson's Wks., 363, 364; 2 Sawy., 668; Dartmouth Coll. v. Woodward, 4 Wheat., 519; Rowna v. State, 30 Wis., 129; Hurtado v. Cali., 110 U. S., 635; Mackin v. U. S., 117 U. S., 348; Ragis v. State, 86 Tenn., 272; Moore v. Police Jury, 32 La. Ann., 1013.)

*Benjamin F. Fowler,* attorney general, and *John C. Baird,* prosecuting attorney, contra.

The warrant issued by the magistrate, which was the only warrant issued, was based upon an affidavit. The constitutional inhibition extends to seizure and arrest only. (Brown v. People, 20 Colo., 161.) The point was not raised in time. It is too late after trial and conviction. (Lambert v. People, 29 Mich., 71; Chase v. People, 2 Colo., 509.) The mode of prosecution by information is as ancient as the common law (4 Blackstone, 309), though not as to felonies. Art. 5 of Amendents to Constitution of U. S. applies only to prosecutions by the United States. (State v. Keyes, 8 Vt., 63; Noles v. State, 24 Ala., 672; State v. Jackson, 21 La. Ann., 574; State v. Anderson, 30 id., 557; State v. Shumbert, 1 Rich. (S. C.), 85; State v. Cowan, 29 Mo., 339; State v. Barnett, 3 Kan., 250; 7 Pet., 243.) An information is sufficiently verified by

the prosecuting attorney upon information and belief. (Washburn v. People, 10 Mich., 372; Hicks v. People, 10 id., 395; State v. Graham, 46 Mo. App., 527; State v. Nulf, 15 Kan., 404; State v. Stoffel, 48 id., 364; Mentor v. People, 30 Mich., 91.) Prosecution by information is due process of law. (Hurtado v. People, 110 U. S., 516; In re Lowrie, 8 Colo., 511; Kalloch v. Sup. Ct., 56 Cal., 229; Rowan v. State, 30 Wis., 131; U. S. v. Black, 4 Sawy., 211; State v. Boswell, 4 N. E., 675; Brown v. Com., 50 Miss., 468.) The term, "due process of law" and "law of the land" are of equivalent import. (Davidson v. N. Orleans, 95 U.S., 97; Murray's Lessee v. H. L.Co., 18 How., 276; Green v. Briggs, 1 Curt., 311; State v. Staten, 6 Cold., 234; Ervine's Appeal, 16 Pa. St., 256; Parsons v. Russell, 11 Mich., 129; Sears v. Cottrell, 5 id., 251; Banning v. Taylor, 16 Pa. St., 292; 28 Cent. L. J., 518.) There is but one subject in the act provided for informations and changing the grand jury system.

GROESBECK, CHIEF JUSTICE.

The petitioner seeks a discharge from the custody of the sheriff of Laramie County, by whom he is held under and by virtue of a mittimus of the district court for that county, having been convicted of the crime of manslaughter in said court, and sentenced under said conviction. The former proceeding in this court under writ of habeas corpus was to secure the admission of the petitioner to bail pending the proceedings in error in this court, which he was about to institute, and his application was refused. In re Boulter, (supra). The illegality of the imprisonment of the petitioner is alleged in his petition to be that he was placed on trial and convicted upon an information charging him with the crime of murder in the second degree, which was verified only upon information and belief, and not upon oath or affirmation, as required by article 1, section 4, of the constitution of this State, and the 4th amendment of the Federal Constitution; that he has been, therefore, deprived of his liberty without due process of law; that the statute under which the information against him was filed is violative of the constitution of the State, and that

such trial as he has had under such information is not due process of law, within the meaning of the Federal and State Constitutions.

The sheriff charged with his detention made answer reciting that the petitioner is held by virtue of the commitment of the district court, and further states that petitioner was, on the 23rd day of November, A. D. 1894, duly charged upon the affidavit of Josiah A. Van Orsdel, with the crime of murder in the first degree, before a justice of the peace for Laramie county, and that upon said affidavit a warrant was issued by said justice of the peace for the arrest and detention of the petitioner upon said charge, and that he was arrested and detained thereon until a preliminary examination was held upon the affidavit, and on November 26, 1894, the said justice found that there was probable cause to believe that said Boulter was guilty of murder in the second degree, and that, therefore, "he be held to answer the said charge to the district court for Laramie County forthwith at the present term of the district court in the penal sum of $5,000." It is further alleged in the answer that the petitioner was charged with the crime of murder in the second degree in the district court, the information being based upon and made upon the affidavit filed before the justice of the peace, and also upon a transcript of the proceedings had before the justice, which was filed in the office of the clerk of the district court for Laramie County. It further appears from this pleading that Boulter pleaded not guilty to the information, and did not except to the verification of the information by a motion to quash, nor by plea in abatement, by demurrer, nor by pleading in bar. This answer is demurred to, and upon the demurrer the proceedings were submitted to the court for final determination.

1. It is now too late to challenge procedure by information as not "due process of law" under the constitutional provisions relating thereto. The matter has been before this court, and our decision sustaining such a procedure is upheld by an overwhelming weight of authority, if not by all of the precedents. In re Wright, 3 Wyo., 478; Rowen v. State, 30 Wis., 129; Hurtado v. California, 110 U. S., 516.

2. We have before us a question never directly decided, and that is the validity of chapter 59 of the session laws of 1890-91. The act provides for the prosecution of all offenses either by indictment or by information; for the procedure in cases of information; that all provisions of the criminal code relating to indictments shall apply, as near as may be, to informations and all prosecutions and proceedings thereon; and further directs that no grand jury shall be summoned or required to attend any of the sessions of the district courts, unless ordered by the court or judge thereof in vacation or recess. When so summoned and ordered, the grand jury is to consist of twelve men, possessing the qualifications of petit jurors in the district court, nine of whom shall concur in the finding of an indictment, and that the findings of the district court on all matters connected with the ordering or summoning of a grand jury shall be final and conclusive, and not subject to review by any court or judge. The authority for this law is found in the Declaration of Rights in our State Constitution, Art. 1, sec. 13, which declares: "Until otherwise provided by law, no person shall, for a felony, be proceeded against criminally, otherwise than by indictment, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger;" and in section 9 of the same article, which reads: "The right of trial by jury shall remain inviolate in criminal cases, but a jury in civil cases in all courts, or in criminal cases in courts not of record, may consist of less than twelve men, as may be prescribed by law. Hereafter a grand jury may consist of twelve men, any nine of whom concurring may find an indictment, but the legislature may change, regulate or abolish the grand jury system."

It is insisted that the legislature under these constitutional provisions had no right to retain the grand jury system and procedure by information, but must provide for one or the other of these methods of accusation, and that the authority conferred by the constitution upon the legislature to change, regulate and abolish the grand jury system, does not confer the authority to keep that system alive, concurrently with

the information method of procedure. In this connection the learned counsel for petitioner urges that the constitutional provision "that all laws of a general nature shall have a uniform operation" (art. 1, sec. 34, Const.), must be applied, and that it is unjust and unconstitutional to subject one man to an accusation by means of an information and another by an indictment found and returned by a grand jury, at the caprice of the prosecuting officer. There is something to sustain this view in the case of In re Lowrie, 8 Colo., 511, where an act under a constitutional provision, word for word like ours, was denounced as unconstitutional because in the creation of certain criminal courts, it was provided that in such courts there should be a procedure by information, while in the other counties in Colorado, where the district courts alone had jurisdiction of criminal causes, and where criminal courts were not established, the method of accusation remained as before, by indictment of a grand jury. On this point, the learned judge delivering the opinion of the court, referring to the address of the delegates to the convention that framed the constitution of Colorado, and as their understanding of the import of that instrument upon the question involved in the case, says: "Concerning the grand jury, the address stated, under the title 'bill of rights,' as follows: 'The grand jury system has been so modified as to make a grand jury consist of twelve men instead of twenty-three, any nine of whom concurring may find a bill; and the question whether it may not be abolished altogether is left to the legislature.' This portion of the address to the people, coupled with the language of the instrument itself, shows the understanding of the framers of the constitution, and, inferentially, the understanding of the people, that it was the expression of their will, at that time, that the grand jury should be retained, subject to the power of the legislature to abolish it. But the people conferred on that body no power to abolish the institution as to one man, leaving it in force as to another; no power to abolish it as to one county, and not as to all the counties; and certainly no power to enact a law which would, to any extent, leave it to the discretion of district attorneys or examining magis-

trates whether an individual should have the advantage of an investigation by a grand jury, or be put to a public trial without such an investigation." In this opinion evidently too much importance is attached to the method of accusation of crime, particularly as our law provides by means of a preliminary examination that there should be an investigation by a judicial officer, a justice of the peace, of the accusation, where the accused may face his accusers and have an opportunity to establish his defense, if he sees fit to do so, an opportunity never afforded by the much vaunted grand jury system, where the proceedings are in secret, and where the accused or his witnesses have no rightful place. The grand jury system had its origin in the darkest period of British history, and no witnesses were sworn, but the indictment was returned upon common report. The accused, if acquitted by a petit jury,. was compelled to abjure the realm, and the alternative was punishment if found guilty, and banishment if innocent. Mr. Justice Matthews, in the celebrated case of Hurtado v. California, 110 U. S., at page 530, well says: "that it is better not to go too far back into antiquity for the best securities for our 'ancient liberties,'" and that the liberties of the people have been preserved and developed by a progressive growth and wise adaptation of new circumstances and situations, rather than by concessions wrung from reluctant rulers.

He quotes from the Commentaries of Sir William Blackstone (4 Bl. Com., 310), to show that the information system is as ancient as the common law itself, and adds these words of that great jurist: "And as to those offenses in which informations were allowed as well as indictments, so long as they were confined to this high and respectable jurisdiction, and were carried on in a legal and regular course in His Majesty's Court of the King's Bench, the subject had no reason to complain. The same notice was given, the same process was issued, the same pleas were allowed, the same trial by jury was had, and the same judgment was given by the same judges, as if the prosecution had originally been by indictment." True, informations were restricted to misdemeanors, and that was at a time when a crime was a felony, as a rule, and mis-

demeanors the exception, and when many felonies were punished capitally.

However, both of these methods of accusation traveled together in those bloody days, and have ever since, even in the Federal courts, where, for offenses less than infamous, informations have been used, under congressional enactment. Wherever the information system has been adopted, and it is a favorite in many States, the grand jury system is still retained, but under restrictions. There may be occasions when a secret investigation may be absolutely necessary for the protection of the citizen and society, and we see no objection to its retention, when directed by a judge of a court of boundless jurisdiction like our district courts, and when it may be presumed that public interests require it. The law is uniform, or was at the time of the preliminary investigation of this case, and at the time of filing the information in the district court, because it required a judicial preliminary investigation, either by a grand jury upon sworn testimony or by a magistrate upon evidence publicly given and in the presence of the accused, with a right on his part to cross-examination and to produce witnesses in his own behalf. The other method of accusation known to the English law, a presentation of a coroner's jury, super visum corpore, which was a sufficient accusation, is not retained. But we have substantially the British method of indictment and information, the latter method more enlarged, but better guarded and more advantageous to the accused.

The record of this case discloses that the petitioner had a preliminary examination upon the charge of murder in the first degree, and that he was held to answer to the district court for the crime of murder in the second degree and admitted to bail. It was held by this court that under the statutes then in force that a preliminary examination was necessary, and that no information could be filed against the petitioner than that for which he was held for trial by the magistrate, or for a lower grade of the same offense (State v. Boulter, 39 Pac., 884, see supra); and the question arose in the various proceedings which culminated in the conviction of petitioner of the crime of manslaughter.

22

It does not lie in his mouth to say that he has not been accused of crime under every safeguard that modern criminal statutes have invented for the protection of the accused. He has been examined under the more humane system, and under one more advantageous to him, and he is in no situation to complain. It seems clear to us that the legislature had the right to retain the grand jury system, and to provide for accusation by information as well as by indictment, under the authority given by constitutional permission to "change, regulate or abolish the grand jury system." The change or regulation made is restricting its operation, and providing for its use at the direction of a court of superior jurisdiction, and it is held in abeyance until called into action. Some other system may be devised to be used until it is employed and the legislature has invented or rather restored the ancient one of process by information with an enlarged sphere of action, and under important regulations that protect the rights of the accused. The provision for the dual system of accusation is not fatal to the act.

3. The statute is further challenged on the ground that it contains more than one subject, both in the title and in the body of the bill.

The constitution provides that: "No bill, except general appropriation bills for the codification and revision of the laws, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject is embraced in any act, which is not expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed." Const., Art. 3, sec. 34. The title to the act is as follows: "An act to change and regulate the grand jury system by reducing the number of grand jurors, providing that a grand jury shall be summoned only when ordered by the court, and providing for prosecution by information and the procedure thereunder." The act very faithfully carries out the matters indicated in the title, and nothing is embraced in the act but what is clearly expressed in the title. Nothing is "crouched in the jungle" of the bill nor "coiled up in its folds" to mislead the legislator or the citizen. The title is a

true index to the act and discloses the objects of legislation. The only objection that may be urged to the act is the duality of subjects of legislations embraced therein, one to regulate the grand jury system by reducing the number of grand jurors and by calling it into operation only when ordered by the court, and the other to provide procedure by information. Are not these subjects of legislation but subordinate to the main purpose of the statute, the accusation of persons accused of crime? Two methods are provided for, one by indictment and one by information, both of which are time honored and both of which are continued, the latter with a larger field than the former, but the former still to be used when a court or judge shall call it into operation. Because there are redundant expressions or needless details of the objects of the act or of the subjects of legislation, the act is not invalidated thereby, so long as the subjects of legislation are congruous, cognate or germane and in furtherance of the general subject of the enactment, even though the act may authorize many things of a diverse nature to be done. The constitutional provision must be reasonably construed, for a narrow construction would impede legislation to such a degree that none but a precisian could successfully draft a valid enactment. If the unities of legislation are preserved, and the distinct provisions are but parts of a whole and essential to the whole, the constitutional requirement is met, as the integers of statutory law are not enumerated by the constitution, and therefore the legislature is at liberty to make such divisions of the general subject of legislation as it thinks proper, if it confines each statute to a single subject, and the subordinate subjects are restricted to the legitimate offspring of the main subject. In Missouri it was held, under a constitutional provision akin to ours, that the definition of crimes and the procedure against persons accused of committing them, might very properly be embraced in one bill. State v. Brassfield, 81 Mo., 151. In the State of Washington, a section of an act like the one under our consideration was assailed as void, because it dispensed with grand juries unless ordered by the court, and this subject was asserted not to be within the title

of the act, which only related to proceedings by information, and was a separate and distinct subject not mentioned in the title; and the constitutional provision like ours was invoked in support of this view, but the unanimous opinion of the court was that the section of the act referred to was within the title, as in providing for proceedings by information, the necessity for a grand jury was dispensed with when such proceedings were employed, and that the same act consequently could very well provide that grand jurors should not be summoned except in the contingency therein mentioned. The court further held that the section providing for a grand jury conditionally did not bring another subject in the act in the sense contemplated by the constitutional provision permitting but one subject to be embraced in an act, as it was not within the spirit or reason of the prohibition, and the subject of the act relating to prosecutions for crimes, the matters therein legislated upon, were all properly included within the act. In re Rafferty (Wash.), 1 Wash St., 382. This case is directly in point, and goes further than we are compelled to go in this case. Here the provisions relating to the summoning of a grand jury are incorporated in the title, while in Washington, the title contained no reference to such provisions, and the court held that the omission was not fatal.

Indeed, the question is not one of first impressions in this court, but was extensively treated of in the case of In re Board of Commissioners of Johnson county, 32 Pac., 850 (In re Fourth Jud. Dist., 4 Wyo.), where the act was held not to fall within the constitutional ban. Sutherland on Stat. Const., sec. 76, et seq.; 23 Am. & Eng. Cyc. Law, 229. The action of the legislature recently in separating the subjects embodied in the act under consideration, is not of any weight, as such action may have been taken through caution, and it is the duty of the courts, and not of the legislature, to construe an act and to consider its constitutionality, although a legislative construction is sometimes entitled to great attention and respect. The late acts contain some new provisions, and the original statute under consideration is continued in force by each of the later statutes in pending cases and as to all

offenses committed prior to the time it takes effect, and so it seems that the act amended was continued in force in this respect by those separating its provisions into new and independent acts. Chs. 114, 123 Sess. Laws 1895.

The further objections to the act challenged by this proceeding need but passing notice. It is asserted that it amends provisions of prior laws by implication without re-enacting them at length, but the legislature is not compelled to resort to the amendment of prior laws, but may enact new legislation covering the same subjects without reference specifically to existing laws. The provisions of the criminal code relating to indictments, writs, process, issuance and service thereof, motions, pleadings, trials and punishments, and all other proceedings in cases of indictment are applied to informations and prosecutions and proceedings thereunder, "as near as may be." The legislature certainly had the right to mould past legislation to conform to the changes in the system of prosecutions and to enact new regulations regarding the number of a grand jury to be summoned when ordered, and the number of that body required to find a true bill, without particular reference to prior statutes containing provisions relating to the same subjects, in the exercise of its right to legislate independently of antecedent legislation.

4. The information charging murder in the second degree, upon the trial under which the petitioner was convicted of manslaughter, was verified upon the information and belief of the prosecuting attorney, which was allowed by the statute, and this proceeding is claimed to be in violation of petitioner's rights. The constitutional guarantee that no warrant shall issue but upon probable cause, supported by affidavit particularly describing the person to be seized, is held to annul the information in this case verified upon information and belief which it is claimed does not support the warrant and is not probable cause. But the answer, with the accompanying records, discloses that there was probable cause for the information filed in the district court, as it was predicated upon the affidavit filed before the magistrate, the inquiry before that officer and the action of the magistrate in holding the peti-

tioner for trial for murder in the second degree, for a lesser offense than was charged in the information before the magistrate. The case falls within the ruling of the Supreme Court of Colorado, in the case of Brown v. People, 20 Colo., 161, under a statute similar to ours in this respect. The defendant attacked an information verified upon information and belief, and it was held that he must show or it must affirmatively appear that no preliminary examination was had, before he could challenge the informal verification of the information, as it was not necessary to disclose in the information that a preliminary examination was had. Washburn v. People, 10 Mich., 372. The verification by the prosecuting officer upon information and belief was held sufficient where a preliminary examination was had, since the arrest of the party charged must have been made upon warrant issued upon the requisite affidavit before the examining officer, which were required to be delivered to the clerk of the court having jurisdiction of the offense, and in the absence of proof to the contrary, a preliminary inquiry would be presumed to have been instituted. In this case before us, the showing of the proper initial affidavit before the magistrate, verified positively, and the preliminary inquiry and holding for trial upon the charge informed against to the district court affirmatively appear, and there was "probable cause supported by affidavit" within the meaning of our constitution. The knowledge of the prosecuting attorney was not founded on information and belief alone, but was based upon an affidavit charging the offense in positive language, and not upon information and belief, and upon the judicial inquiry by the examining magistrate resulting in the holding of the petitioner to answer for the offense with which he was charged by the information in the district court, and upon which he was there tried. The verification to the information filed in the district court, although made by the public prosecutor upon information and belief, was based upon the preliminary examination and embodied the result of that judicial inquiry, and this was sufficient.

The points raised in this proceeding have been patiently considered by this court, although they might all have been

raised in proceedings in error without resorting to habeas corpus. Where the writ of habeas corpus has issued from this court the petitioner has at times been brought before it, in cases arising in the county of this State where the court has been held, but it must not be understood that this case and others that have preceded it, where the petitioner has been brought into court, must be followed as precedents. No objection has been raised to such action, and this court has not considered it. The practice is not one to be commended, and it is doubtful if this court is required to have the prisoner before it at a hearing upon habeas corpus.

The demurrer to the answer of the sheriff of Laramie County is overruled and the petitioner is remanded to the custody of that officer.

CONAWAY and POTTER, J. J., concur.