COBB *v.* ATKINS.

5-3441                                    388 S. W. 2d 8

Opinion delivered March 15, 1965.

*Macom and Moorhead, Jimason J. Daggett,* for appellant.

*George E. Pike* and *Milton G. Robinson,* By *Milton G. Robinson,* for appellee.

ED. F. McFADDIN, Associate Justice. A traffic mishap, involving a farm tractor and two automobiles, resulted in the death of three persons and injuries to three others; and this litigation resulted. Appellees were the plaintiffs, and appellants were the defendants.

At about 9:30 A.M. on February 6, 1963, Mr. H. E. Cox was driving his automobile north on State Highway No. 11 enroute to Stuttgart, and in the car with him were his wife, and Mr. and Mrs. Charles Atkins. Also going toward Stuttgart, and in front of the Cox car, there was a farm tractor owned by Clarence Cobb and being driven by his employee, Archie Earls. Mrs. Wanda Callison was driving her car south from Stuttgart and in the car with her were her two children, Pamela and Sue Callison. The testimony is in hopeless conflict as to exactly how the traffic mishap occurred; but by its verdict

the jury found that as Mr. Cox started to pass the tractor it swerved to the left and struck the Cox car and caused the car to turn over and rest on its left side; and while the Cox car was in that position it was struck by the Callison car. The result of the mishap was that Mr. and Mrs. Cox and Mrs. Atkins were killed; Mr. Atkins sustained severe injuries; and Mrs. Wanda Callison and her daughter Pamela were both injured; and Mrs. Callison's car was damaged.

Two actions for damages were filed against Mr. Cobb, the owner, and Archie Earls, the driver of the farm tractor. In one of these actions the plaintiff was Mr. Atkins; and in the other the plaintiffs were Mrs. Callison and her daughter Pamela. In both actions it was alleged that Archie Earls was driving the tractor as the servant of Mr. Cobb and in the scope of his employment; that Earls was driving the tractor in a negligent and dangerous manner; that as the Cox car undertook to pass the tractor on the left side of the road the tractor swerved to the left and struck the Cox car and caused it to overturn and rest on its left side in the path of the approaching Callison car, resulting in the collision and damage; that neither the driver of the Cox car nor the driver of the Callison car was negligent; and that all the negligence was that of the driver of the tractor.

Against the Callison complaint the defendants answered with a general denial; and against the Atkins complaint there was a general denial and also a plea of contributory negligence. The two actions were consolidated and tried to a jury, resulting in verdicts and judgments against the defendants in favor of the plaintiffs; and from these judgments Mr. Cobb and Archie Earls bring this appeal, listing five points,[1] which we will discuss in the order listed.

---

[1] Appellants' five points are:

"I. The Court erred in permitting the jury to consider the question of whether a lookout was kept by Archie Earls since no evidence was offered relating thereto.

"II. The Court erred in denying the defendants' motion to strike from the complaint and from the jury's consideration the allegation that the tractor was being driven in the middle of the road in such manner as to prohibit cars traveling in the same direction to pass it.

## I.

The Callison complaint alleged: "The driver of the tractor failed to observe traffic conditions or keep a lookout for same, and disregarded same." The Atkins complaint alleged: "The driver of the tractor was keeping no look out whatever for the safety of this plaintiff or others."

At the close of the plaintiffs' case in chief the defendants moved that the foregoing allegations be stricken, insisting that the plaintiffs had offered no evidence to sustain the allegations. The Court denied the motion to strike and the correctness of that ruling is presented in appellants' first point. We hold that the ruling of the Trial Court was correct. Mr. Atkins had testified: that Mr. Cox blew his horn four or five times before attempting to pass the tractor; that the tractor was going back and forth across the middle line of the road; that Archie Earls in driving the tractor was "going so fast it was bouncing him up and down"; that the tractor would swerve from one side to the other; and "sometimes he was over in the right lane and sometimes he was over in the left lane." The testimony as to such driving would certainly be sufficient to take the case to the jury on whether the driver of the tractor was observing traffic conditions.

It is true that Atkins said of Archie Earls: "He looked over that way at us"; but whether a mere glance over the shoulder at a vehicle attempting to pass constitutes a sufficient lookout, is a question for the jury to decide. We like what the Supreme Court of Iowa has

"III. There is no substantial evidence of any negligence on the part of Archie Earls and the Court erred in refusing to instruct a verdict in favor of the defendant in both cases.

"IV. Conceding, for argumentative purposes, that the tractor did weave across the center line; as testified by Atkins, this act was not a proximate cause of the accident and the trial court should have instructed a verdict in favor of the defendants.

"V. The Court erred in refusing to submit the Atkins case to the jury upon the interrogatories requested by defendants (Transcript 217) and although instructing the jury on the issue of contributory negligence he thereby precluded the jury in arriving at its verdict from giving consideration to the issue of comparative negligence."

said concerning a proper lookout in automobile cases. In *Mueller* v. *Roben,* 82 N. W. 2d 98, the Iowa Court said:

"With reference to motor vehicle operation 'lookout' is that watchfulness which a prudent and reasonable person must maintain for his own safety and the safety of others, taking into consideration the circumstances with which he is immediately concerned or confronted." In *Ehrhardt* v. *Ruan,* 61 N. W. 2d 696, the Iowa Court said:

". . . proper lookout means more than to look straight ahead, or more than seeing the object; that it implies being watchful of the movements of his own vehicle as well as the movements of the things seen; that it involves the care, prudence, watchfulness and attention of an ordinarily careful and prudent person under the circumstances."

We find no merit in the appellants' first point.

## II.

Both the Callison and the Atkins complaints alleged that the tractor was being driven in the middle of the road "in such manner that cars traveling in the same direction were unable to pass the tractor." At the close of the plaintiffs' case in chief the defendants moved to strike these allegations, insisting that there was no evidence to support them. The Trial Court denied the motion to strike; and we hold that the ruling was correct. The testimony that we referred to in Topic I *(supra)* is applicable here; and also there is positive testimony of Mr. Atkins regarding the tractor: ". . . sometimes he was over in the left lane." If the tractor was in the left lane, certainly there was no room left for cars to pass.

## III.

Appellants' third point is an insistence that there was no substantial evidence that Archie Earls was guilty of negligence and that the Trial Court should have in-

structed a verdict for the defendants in both cases. But here, again, the evidence of Mr. Atkins made a jury case. He testified:

"Q. Now as you started to pass the tractor on which side was your car with reference to the white line?

"A. We were on the west side of the white line.

"Q. Where was the tractor with reference to the white line?

"A. When we started to pass the tractor, he was on the east side but when we got on the west side of the highway the left rear wheel of the tractor came across the line to the west side and that is what hit us.

"Q. When he wobbled or when the tractor wheel crossed the center line over to the west side that is when it hit you or the car you were in?

"A. That is correct.

"Q. And again at the time the tractor wheel struck the car you were in on which side of the highway was it?

"A. The tractor wheel came across the center of the highway to the west side and that is what struck the car.

"Q. Are you sure that you were on the west side of the highway in your proper lane?

"A. I am sure we were.

"Q. And are you sure when he wobbled he wobbled into your lane or was he still in his own lane?

"A. He wobbled over into our lane and hit us. He was moving back and forth.

"Q. Over the center of the highway?

"A. Yes, sir.

"Q. What actually hit the car?

"A. Well it was the lugs on the tractor tire.

"Q. What happened when the lugs hit the car?

"A. It turned our car over in the road."

The copied evidence was sufficient to take the cases to the jury on the question of the negligence of the driver of the tractor. The appellants vigorously attacked the testimony of Mr. Atkins; but the verity of his testimony was a matter for the jury to decide. The Trial Court was correct in refusing the motion for an instructed verdict.

## IV.

The appellants' fourth point is a claim that the proximate cause of the accident was not the striking of the Cox car by the tractor; but we are unable to follow the appellants in such argument in view of the Atkins testimony as above copied. There was enough evidence to take the case to the jury and to support the verdict, that the proximate cause of the mishap was the tractor crossing over the center line and striking the Cox car. Furthermore, the physical facts support the verdict because the top of the Cox car was torn back, thus indicating that the Cox car was on its side when struck by the Callison car.

## V.

The appellants' fifth point relates to the refusal of the Trial Court to submit the case to the jury on special interrogatories. There were four of these special interrogatories requested: the first was whether the defendants were guilty of any negligence; the second was whether Mr. Atkins was guilty of any negligence; the third was the percentage of negligence of Atkins and the defendant Earls; and the fourth was the amount of damages sustained by each defendant. The Trial Court refused these special interrogatories and submitted the case to the jury for a general verdict. The appellants call our attention to the panel proceedings as found in Arkansas Law Review, Volume 10, Page 94, et seq., and say:

"We are quite aware that the mandatory provisions of the original 1955 'Comparative Negligence Act' (Act 191) were repealed by the 1957 Act (Act 296), and the

1961 Act (Act 170). This does not mean, however, that when a proper request is made for the use of interrogatories in connection with the current àct that the trial court can arbitrarily ignore it and thereby preclude the jury's consideration of a properly presented defense." There was a short period of time—when Act No. 191 of 1955 was in force—that it was mandatory for the court to submit the case to the jury on special issues when such request was made. But that legislative enactment was repealed by Act No. 296 of 1957 (see *St. L. S. W. Ry.* v. *Robinson,* 228 Ark. 418, 308 S..W. 2d 282); so that now the Trial Court has discretion as to whether to submit on a general issue or on special issues. It is often advisable to submit the case to the jury on special issues; but in the case at bar, after reviewing the record and the instructions given, we cannot say that the Trial Court abused its discretion. The appellants have not so demonstrated.

Affirmed.