Helen Marie JOHNSON, Appellant (Plaintiff below),

v.

SAFEWAY STORES, INC., a Wyoming Corporation, and David Thatcher, an Individual, Appellees (Defendants below).

No. 4752.

Supreme Court of Wyoming.

Sept. 15, 1977.

Michael L. Wass, of Winter & Burgess, Casper, for appellant.

Harry L. Harris, Evanston, for appellees.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

The primary issue in this appeal is whether the trial court erred by reason of its refusal to give an instruction informing the jury concerning the effect of the percentage findings in its verdict under our comparative negligence statute.[1] The accident occurred prior to the effective date of the recent legislative enactment of § 1–7.7, W.S.1957, 1976 Interim Supp., permitting such advice to the jury, but the trial was held thereafter.[2] In its special verdict, the

---

1. Section 1–7.2, W.S.1957, 1975 Cum.Supp., provides:

"Comparative negligence.—(a) Contributory negligence shall not bar a recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought. Any damages allowed shall be diminished, in proportion to the amount of negligence attributed to the person recovering.

"(b) The court may, and when requested by any party, shall:

"(i) If a jury trial, direct the jury to find separate special verdicts;

"(ii) If a trial before the court without a jury, make special findings of fact; determining the amount of damages and the percentage of negligence attributable to each party; and the court shall then reduce the amount of such damages in proportion to the amount of negligence attributed to the person recovering."

2. Section 1–7.7, W.S.1957, 1976 Interim Supp., provides:

"Pleadings; ad damnum clause.—The ad damnum clause or prayer for damages incorporated in a pleading which sets forth a claim for relief based upon personal injury or wrongful death shall not state any dollar amount as alleged damages or demand a sum as judgment other than an allegation that the

jury found the plaintiff seventy percent negligent and the defendants thirty percent negligent, and awarded the plaintiff damages in the sum of $18,000. The trial court then entered judgment in favor of the defendants as required by the comparative-negligence statute.

We will affirm.

On January 11, 1974, the plaintiff, while carrying out her duties as a frozen-food clerk for the Safeway Store located in Rock Springs, Wyoming, was struck on the back and neck by several tins of frozen eggs when a popcrate used for storage collapsed. She filed suit on April 17, 1975, against the defendants, Safeway Stores, Inc., its store manager, David Thatcher, and Leo Cardello,[3] an employee of the store, seeking damages for her injuries alleged to have been caused by the defendants' careless stacking and storage of foodstuff and Safeway's failure to provide her with a safe place to work. The defendants denied any negligence and affirmatively alleged that the plaintiff's injuries were solely the product of her own negligence. At the close of the trial, which commenced August 24, 1976, the plaintiff offered an instruction designed to inform the jury of the legal effect of its special findings.[4] The proffered instruction was refused by the trial court, which refusal structures the basis from which this appeal is taken.

The plaintiff-appellant urges this court to (1) give the newly-enacted § 1–7.7 a retrospective application, and (2) hold that the

trial court's refusal to advise the jury on the effect of the comparative-negligence statute was erroneous for failure to comply with its terms. Before we can reach the question concerning the statute's retrospective or prospective application, we must first determine whether the statute was intended by the legislature to apply to comparative-negligence actions.

## BACKGROUND

In 1973, Wyoming joined the growing list of states which, since the late 1960's, have chosen to legislatively abrogate the doctrine of contributory negligence, infused with its first breath in the English case of *Butterfield v. Forrester*, 11 East 60, 103 Eng.Rep. 926 (1809). The first case in Wyoming involving the construction of § 1–7.2 (supra Note 1), a Wisconsin-type comparative-negligence statute, was *Woodward v. Haney*, Wyo., 564 P.2d 844, decided May 18, 1977, wherein we were faced with the issue concerning the propriety of the trial court's refusal to inform the jury of the effect of its answers to the interrogatories in the special verdict. At the time of the decision, the Wyoming Legislature had added § 1–7.7 (supra, Note 2), effective May 28, 1976.

The last-mentioned section was not considered in *Woodward* because of its enactment after the verdict and judgment below. Instead, the decision on the merits was dependent upon ascertaining the intention of the legislature *at the time* our comparative-negligence statute was adopted. It was our holding

damages are of an amount necessary to establish jurisdiction of the court. Nothing herein shall be construed to prevent any party from arguing to the court or jury the amount of his claim in money. In all cases the court shall inform the jury of the consequences of its verdict."

3. The cause of action against Leo Cardello was subsequently dismissed by stipulation of the parties.

4. The text of the offered instruction is taken from Colorado Jury Instructions: Civil, § 9:31, and appears as follows:

"*For events occurring on or after July 1, 1975:*

"If you find the claimed damages were proximately caused by both the negligence of the plaintiff, (*name*), and the defendant,

(*name*), then you must determine to what extent the negligent conduct of each contributed to the damages of the plaintiff, expressed as a percentage of 100 percent.

"If you find that both parties were negligent and that the negligence of the plaintiff was equal to or greater than the negligence of the defendant, then the plaintiff will not be allowed to recover.

"If you find that both parties were negligent and that the negligence of the defendant was greater than the negligence of the plaintiff then the plaintiff will be allowed to recover.

"If the plaintiff is allowed to recover, the damages will be reduced by the Court by the percentage of the plaintiff's negligence."

" . . . that under § 1–7.2(a), *unqualified by § 1–7.7, whatever effect the latter section may currently have,* the intent of the Wyoming State Legislature was to adopt the Wisconsin judicial construction of the comparative negligence statute at the date of enactment, holding that it is reversible error to advise the jury in argument or by instruction of the effect of its verdict. We can find no fault with the rationale of the Wisconsin Supreme Court, then existing and of which the Wyoming Legislature was presumed to be aware. *It is immaterial that the Legislature may have since changed its mind."* [Footnote omitted] *Woodward v. Haney,* supra, 564 P.2d at page 846. [Emphasis supplied]

We made it clear that the issue having to do with the effect of § 1–7.7 on § 1–7.2 would not be decided in that case, thereby leaving the question open for consideration when appropriately raised in a future case. The time for decision-making has come.

## APPLICABILITY OF SECTION 1–7.7 TO COMPARATIVE NEGLIGENCE ACTIONS

■ We must first examine the statute in question for the purpose of ascertaining what the legislature intended by its enactment. The source of that intent must, wherever possible, be found in the language of the statute itself. *Wyoming State Treasurer v. City of Casper,* Wyo., 551 P.2d 687, 697 (1976); *Mahoney v. L. L. Sheep Company,* 79 Wyo. 293, 333 P.2d 712, 715 (1958). In *Geraud v. Schrader,* Wyo., 531 P.2d 872, 878 (1975), cert. den. sub nom., *Wind River Indian Education Association, Inc. v. Ward,* 423 U.S. 904, 96 S.Ct. 205, 46 L.Ed.2d 134, we said:

" . . . Where the language of a statute is plain, unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to rules of statutory construction, and the court has no right to look for and impose another meaning. *Druley v. Houdesheldt,* 1956, 75 Wyo. 155, 160, 294 P.2d 351, 352, reh. den. 75 Wyo. 155, 296 P.2d 251. Courts will not usurp the power of the legisla-

ture by deciding what should have been said. *Barber v. State Highway Comm'n,* 1959, 80 Wyo. 340, 351, 342 P.2d 723, 725."

■ Unless it is clearly repugnant to the intention of the legislature, the words and phrases used in a statute shall be taken in their ordinary and usual sense (§ 8–18, W.S. 1957, 1975 Cum.Supp.), and "when a word has a well-settled meaning in the law at the time of usage it will be so understood unless a different meaning is unmistakably intended." *School Districts Nos. 2, 3, 6, 9, and 10 v. Cook,* Wyo., 424 P.2d 751, 757 (1967). See also, *Title Guaranty Company of Wyoming, Inc. v. Belt,* Wyo., 539 P.2d 357, 359 (1975). We said in *Markle v. Williamson,* Wyo., 518 P.2d 621, 625:

"In *Kilpatrick v. Superior Court,* 105 Ariz. 413, 466 P.2d 18, 27, the Arizona Supreme Court had this to say about the role of courts and judicial tinkering:

" 'Courts are not at liberty to impose their views of the way things ought to be simply because that's what must have been intended, otherwise no statute, contract or recorded word, no matter how explicit, could be saved from judicial tinkering. Moreover, if the sense of a word is not to be taken in its usual and commonly understood meaning except under circumstances where a different meaning is clearly intended, it becomes impossible for men to mean what is said or say what they mean and purposeful communication is unattainable.' "

It is with these rules in mind that we consider the meaning and application of the last sentence in 1–7.7, i. e., "In all cases the court shall inform the jury of the consequences of its verdict." Our primary concern is with the phrase, "In all cases." Black's Law Dictionary, Revised Fourth Edition, p. 98, defines "all" to include:

" . . . Every member of individual component of; each one of—used with a plural noun. In this sense, all is used generically and distributively. . . ."

"All" has also been defined as a word that " . . . is commonly understood and

usually does not admit of an *exception, addition, or exclusion.*" [Emphasis supplied] *Consolidated Freightways Corp. of Del. v. Nicholas*, 258 Iowa 115, 137 N.W.2d 900, 904 (1965).

The use of the phrase, "In all cases," conveys a clear and commonly-understood meaning which can be applied in a fashion consistent with the other provisions of the statute. The phrase relates to a class of civil actions which are characterized as personal injury or wrongful death and refers without exception to *all cases which fall into this class.* Thus, the very language of § 1–7.7 makes it clear to the practitioner that when a pleading sets forth a claim for relief based upon personal injury or wrongful death, there are three requirements which are triggered by the statute:

(1) The ad damnum clause shall not state a dollar amount as alleged damages or demand a sum as judgment other than an allegation to the effect that the damages meet jurisdictional requirements;

(2) The limitation upon the ad damnum clause shall not be construed to prevent argument to the court or jury concerning the amount of any party's claim; and

(3) *The court shall inform the jury of the consequences of its verdict.*

We hold that a mere reading of the language in § 1–7.7 evinces a clear and definite meaning. It is, therefore, not within our power to search for and impose another meaning. That would be judicial tinkering! This being the case, we hold that the legislature, by its enactment, manifested a clear intendment for its provisions to apply without exception to all personal-injury actions, including those cases

brought by " . . . any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, . . . " § 1–7.2(a), supra.

Our task would now be complete were it not for the apparent conflict which arises between the construction just placed on § 1–7.7 and the construction placed on § 1–7.2(a) in *Woodward v. Haney*, supra. In that case, we applied the rule that when the legislature adopts a statute from another state, it is presumed to have adopted the existing construction placed upon the statute by the courts of last resort of that state as part of the law and to have intended for the same construction to apply in this state. 564 P.2d at 845. We then followed Wisconsin precedent and held that under § 1–7.2(a), it is reversible error to inform the jury by argument or instruction of the effect of its verdict. We are not, however, without aid or authority in resolving the conflict between the two statutes.

Statutory provisions may be amended by implication, and this commonly occurs when an act, purportedly independent of the prior act, substantively alters, modifies, or adds to the older law. 1A Sutherland, Statutory Construction, Sands 4th Ed., § 22.13. Amendments by implication, like repeals by implication[5], are not favored (*Geraud v. Schrader*, supra, quoting from 1A Sutherland, supra, at § 22.13), and will not be upheld unless there is a manifested repugnancy or irreconcilable conflict between the two statutes. *Rickards v. State*, 45 Del. (6 Terry) 573, 77 A.2d 199, 203 (1950); *Miami Water Works Local No. 654 v. City of Miami*, 157 Fla. 445, 26 So.2d 194, 196, 165 A.L.R. 967 (1946); *Hallahan v. Sawyer*, Ky.,

---

**5.** The rules governing implied repeals of prior statutes are stated in *Thomas v. State*, Wyo., 562 P.2d 1287, 1290 (1977), wherein we said:

"Repeals by implication are not favored, *State v. Cantrell*, supra, 64 Wyo. 132, 186 P.2d 539 at 543; but this court has not hesitated to apply this in a proper case, *Longacre v. State*, Wyo., 448 P.2d 832, 834; *Blount v. City of Laramie*, Wyo., 510 P.2d 294, 296; *Tucker v. State ex rel. Snow*, 35 Wyo. 430, 251 P. 460, 465. If the statutes cannot stand together and if they are repugnant by virtue of relating to the same subject and are directed at a distinct offense with the same object, the earlier cannot stand, *State v. Cantrell*, supra. In *Haines v. Territory*, 3 Wyo. 167, 13 P. 8, 11, the court recognized the rule that a later specific statute controls over a general statute."

These rules are very similar to those which govern the application of the amendment in this case.

390 S.W.2d 664, 665 (1965); *Bell v. State*, 236 Md. 356, 204 A.2d 54, 60 (1964); and 82 C.J.S. Statutes § 252. All statutes relating to the same subject or having the same general purpose must be read as constituting one law, and, where possible, should be harmoniously construed in order to avoid conflicting and confusing results. *In re Adoption of Female Child X*, Wyo., 537 P.2d 719, 723 (1975); *Woolley v. State Highway Commission*, Wyo., 387 P.2d 667, 673 (1963). However, if the conflict cannot be reconciled so that the provisions can stand together, then the later provision will prevail over the prior one, and the prior law is considered amended by implication only to the extent of the conflict.[6] *Co-ordinated Transport v. Barrett*, 412 Ill. 321, 106 N.E.2d 510, 515 (1952), aff'd 344 U.S. 583, 73 S.Ct. 468, 97 L.Ed. 567, reh. den. 345 U.S. 931, 73 S.Ct. 778, 97 L.Ed. 1360; *Jumper v. Moore*, 110 Me. 159, 85 A. 485, 486 (1912); *State v. Fowler*, 207 Or. 182, 295 P.2d 167, 173 (1956).

We feel that there is enough of a conflict between § 1–7.7 and § 1–7.2(a) that the two cannot stand together. If we were to decide that § 1–7.2(a), as construed, was not subsequently amended by that portion of § 1–7.7 having to do with the requirement of informing the jury of the effect of its verdict, then we would inject irreconcilable inconsistency and confusion to our jurisprudence. We would, in effect, rewrite the last sentence to read: "In all cases the court shall inform the jury of the consequences of its verdict, *with the exception of those cases which fall under the provisions of § 1–7.2(a).*" We are without authority to modify § 1–7.7 by writing into it an exception which the legislature did not express.

Cf. *Longacre v. State*, Wyo., 448 P.2d 832, 834 (1964).

In *Ivey v. Wiggins*, 276 Ala. 106, 159 So.2d 618 (1964), the Supreme Court of Alabama was faced with the question of whether a cause of action for wrongful death survives against the personal representative of the deceased tortfeasor. In its disposal the court had to determine whether a statutory provision applied to a separate statute. The court, in examining the language of the former act, said:

"The word 'all,' in ordinary use, is wholly inclusive as we understand it. It must embrace every personal cause of action. If we should hold that it does not embrace or include causes of action for wrongful death, then we would have to read it as 'all personal causes of action except for wrongful death survive,' etc. *The legislature did not write in the exception and this court is not authorized to do so.*" Ibid., 159 So.2d p. 620. [Emphasis supplied]

In *Woodward v. Haney*, supra, we pointed out that Colorado, whose comparative-negligence statute was patterned after that of Wisconsin, had followed Wisconsin precedent in holding that it is reversible error to inform the jury on the effect of its percentage findings on the ultimate outcome of the case, citing *Avery v. Wadlington*, 186 Colo. 158, 526 P.2d 295 (1974). Since the opinion in that case, the Colorado General Assembly amended its comparative-negligence statute, effective July 1, 1975, to require instruction to the jury on the effect of its findings and allowing argument by counsel to the jury on the effect of such instruction.[7] Section 13–21–111(4), Colora-

---

6. An implied amendment does not contravene the provisions of Article 3, Section 26, of the Wyoming Constitution which requires that a law shall not be revised or amended by reference to its title only. The legislature may enact legislation covering the same subjects without specific reference to existing laws in the exercise of its right to legislate independently also antecedent legislation. If the new legislation alters, modifies, or adds to a prior statute, the amendment is implied and is not within the constitutional prohibition. *In re Boulter*, 5 Wyo. 329, 40 P. 520 (1895).

7. A number of states have in recent years joined the trend in permitting the jury to be informed on the legal effect of its findings. See *Cobb v. Atkins*, 239 Ark. 151, 388 S.W.2d 8 (1965); Conn.Gen.Stat.Ann. § 52–572h (1975); Minn.R.Civ.P. 49.01; Nev.Rev.Stat. § 41.141 (1973); North Dak.Cent.Code § 9–10–07 (1973); and Tex.R.Civ.P. 277. It would also appear that the New Hampshire and Vermont statutes permit such information to be given to the jury. See N.H.Rev.Stat.Ann. § 507:7a (1975 Supp.) and Vt.Stat.Ann., tit. 12, § 1036 (1973). This compilation does not consider states which follow the pure comparative-negligence concept.

do Revised Statutes 1973, 1976 Cum.Supp., reads as follows:

"In a jury trial in any civil action in which contributory negligence is an issue for determination by the jury, the trial court shall instruct the jury on the effect of its finding as to the degree of negligence of each party. The attorneys for each party shall be allowed to argue the effect of the instruction on the facts which are before the jury." (Colo. Laws 1975, Ch. 152, § 1)

This amendment has been recently construed as imposing an independent duty upon the trial court to instruct the jury on the comparative-negligence statute's effect even though the plaintiff's counsel did not make a request for such an instruction. *Appelgren v. Agri Chem, Inc.,* Colo.App., 562 P.2d 766 (1977).

■ We hold that the Wyoming Legislature, in enacting § 1–7.7, supra, clearly intended for its provisions to apply to comparative-negligence actions and amended § 1–7.2(a) to the extent that in such actions the jury shall be informed by the trial court on the effect of its percentage findings, as those findings affect the outcome of the case, and particularly the damage issue.

## RETROSPECTIVE APPLICATION OF SECTION 1–7.7

The effective date of § 1–7.7, supra, was May 28, 1976. See Session Laws of Wyoming 1976, Ch. 10, Section 2. The plaintiff filed suit against the defendants on April 17, 1975, seeking damages for the personal injuries suffered as the result of the accident which occurred on January 11, 1974. The trial of the case commenced on August 24, 1976. The plaintiff requests this court to apply § 1–7.7 retrospectively and then reverse the trial court for failure to instruct the jury on the effect of its findings.

■ Wyoming has long followed the general rule that retrospective application of a statute to events occurring before enactment of a statute is not favored. *State ex rel. Lynch v. Board of County Commission-*ers, 75 Wyo. 435, 296 P.2d 986, 988 (1956); *Mustanen v. Diamond Coal & Coke Co.,* 50 Wyo. 462, 62 P.2d 287, 292 (1936); *Lee v. Cook,* 1 Wyo. 413, 417 (1878). In *Mestas v. Diamond Coal & Coke Co.,* 12 Wyo. 414, 76 P. 567, 569 (1904), we said that it is

" . . . well settled in our jurisprudence that the rule applies with almost, if not quite, equal force to constitutions as well as to statutes, that a provision will operate prospectively only, unless the words employed show a clear intention that it should have a retrospective effect. Cooley's Const. Lim. 62; *Garrick v. Chamberlain,* 97 Ill. 620, 633; 8 Cyc. 745, 747; *County of Allegheny v. Gibson,* 90 Pa. 397, 35 Am.Rep. 670; *N. C. Coal Co. v. C. & I. Co.,* 37 Md. 537. . . . "

See also, *Bemis v. Texaco, Inc.,* Wyo., 400 P.2d 529, 530, reh. den. 401 P.2d 708 (1965).

Earlier in this opinion we discussed in detail the rule stated in *Woodward v. Haney,* supra, to the effect that interpretations which another state places upon its statute are very persuasive when our legislature adopts an act identical or similar to that statute. *Woodward,* at 564 P.2d 845. Wisconsin has consistently refused to apply its comparative-negligence statute retrospectively. *Brewster v. Ludtke,* 211 Wis. 344, 247 N.W. 449 (1933); *Peters v. Milwaukee Electric Ry. & Light Co.,* 217 Wis. 481, 259 N.W. 724 (1935). When Wisconsin recently amended its comparative-negligence statute to give the plaintiff the right to recover when his negligence was exactly equal to that of the defendant, the Supreme Court of Wisconsin held that such a modification of its law cannot operate retrospectively. *Holzem v. Mueller,* 54 Wis.2d 388, 195 N.W.2d 635, 640 (1972); *Lupie v. Hartzheim,* 54 Wis.2d 415, 195 N.W.2d 461, 462 (1972).

■ We hold that the Wyoming Legislature intended for the provisions of § 1–7.7, supra, to apply to incidents occurring only on or after May 28, 1976. There is no legislative directive which demonstrates a contrary intent.

The plaintiff, nevertheless, argues that we can apply the statute retrospectively because it is a remedial or procedural statute which does not enlarge, diminish or destroy contractual or vested rights but relates only to remedies or modes of procedure which are not within the general rule against retrospective application, citing 82 C.J.S. Statutes § 416, at p. 992. An instruction, however, such as that involved in this case has been held, for the purpose of applying conflicts-of-law principles, as affecting substantive rights. *McGinn v. Utah Power & Light Company*, Utah, 529 P.2d 423 (1974).

If any doubt remains on the subject, the plaintiff cannot escape the provisions of our general savings clause. Section 8–21, W.S. 1957, reads as follows:

> "*Whenever a statute is repealed or amended such repeal or amendment shall in no manner affect pending actions,* prosecutions or proceedings, civil or criminal, and *when the repeal or amendment relates to the remedy, it shall not affect pending actions*, prosecutions or proceedings, *unless so expressed*, nor shall any repeal or amendment affect causes of such action, prosecutions or proceedings, existing at the time of such amendment or repeal, unless otherwise expressly provided in the amending or repealing act." [Emphasis supplied]

Affirmed.

GUTHRIE, C. J., filed special concurrence, in which RAPER, J., joins.

RAPER, J., filed separate special concurrence.

GUTHRIE, Chief Justice, concurring specially, in which RAPER, Justice, joins.

I concur in the result, believing, however, that the holding that § 1–7.7, W.S.1957, 1976 Int.Supp., cannot be applied retrospectively makes a complete and proper basis for the disposal thereof, and do not join in the discussion of the applicability of § 1–7.7 to this set of facts.

RAPER, Justice, specially concurring.

I would only add to the remarks of the Chief Justice, cases that clearly support his position, holding that questions of academic interest and potentially determinative when not requisite to an adjudication will not be discussed. *Wallace v. Casper Adjustment Service*, Wyo., 1972, 500 P.2d 72; *Druley v. Houdesheldt*, 1956, 75 Wyo. 155, 294 P.2d 351, reh. den. 296 P.2d 251. There is no need to anticipate the application of the statute and, in doing so, the majority is rendering an advisory opinion. Retrospectivity was the only question and that is well disposed of by that part of the opinion, entitled, "RETROSPECTIVE APPLICATION OF SECTION 1–7.7." It will be soon enough to consider the effect of the amendment and its application in a real case arising when § 1–7.7 is in force and effect. Until we see it in operation, we should not precast its future. The majority's utterances beyond retrospectivity are no more than obiter dicta.