Lawrence J. GERAUD et al., Appellants
(Petitioners below),

v.

Robert G. SCHRADER, State Superintendent
of Public Instruction, et al., Appellees (Respondents below),

and

Wind River Indian Education Association,
Inc., a nonprofit Wyoming Corporation, et
al., Appellees (Intervenors below).

Alfred WARD et al., Appellants
(Petitioners below),

v.

Robert G. SCHRADER, State Superintendent
of Public Instruction, et al., Appellees (Respondents below),

and

Wind River Indian Education Association,
Inc., a nonprofit Wyoming Corporation, et
al., Appellees (Intervenors below),

and

Fremont County Vocational High School District and Lander School District No. 1, Appellants (Second Intervenors below).

Nos. 4389–4391.

Supreme Court of Wyoming.

Feb. 7, 1975.

Rehearing Denied March 19, 1975.

Frank P. Hill, and Richard I. Leedy of Hettinger & Leedy, Riverton, for appellants, Lawrence J. Geraud and others.

W. A. Smith of Smith & Simonton, Lander, for appellants, Alfred Ward and others.

Harold E. Meier of Meier & Gist, Lander, for appellants-second intervenors, Fremont County Vocational High School District and others.

David B. Kennedy, Atty. Gen., and Jerome F. Statkus, Asst. Atty. Gen., Cheyenne, for appellees, Robert G. Schrader, and others.

H. Clandillon Phibbs II, Jackson, Michael P. Gross, Henniker, N.H., and John Forhan, South Bend, Ind., for appellees-intervenors, the Wind River Indian Ed. Ass'n, Inc., and others.

Before McEWAN,[1] C. J., and GUTHRIE,[2] McCLINTOCK, RAPER and THOMAS, JJ.

RAPER, Justice.

While there are a number of reasons why the court cannot approve the action of the state committee for school district organization, one of several of which would be dispositive of the case, as later in this opinion disclosed, it is felt by the court that a decision confining itself to a single reason or issue would not be useful in the future reorganization of Fremont County. Before turning to the primary questions, which we decide, there should be some narrative generally outlining the history of the Fremont County long-drawn-out efforts to become reorganized under the mandate of the Wyoming School District Organization Law of 1969, §§ 21.1–105 through 21.1–135, W.S.1957, 1973 Cum.Supp.

Fremont County has 11 schools districts. Under the School District Organization Law, the Fremont County Planning Committee in June, 1971, presented its first plan of reorganization of the school districts of that county. Three other plans were subsequently presented, all of which were rejected by the state committee for various reasons. The court will not attempt to describe each plan, but through the opinion, as appropriate, may mention some pertinent features. The last plan proposed was rejected by the state committee on March 2, 1973. On March 30, 1973, the state committee made a decision and order creating its own four-district plan and directing that it be carried into effect. It is from this order and decision of the state committee that two groups of citizens and taxpayers in Fremont County appealed first to the district court and with the intervenor school districts, now to this court, from the judgment of the district court.

The district court permitted the Fremont County Vocational High School District and the Lander School District No. 1 to intervene, purportedly pursuant to Rule 24, W.R.C.P. Section 21.1–128 provides that:

"An appeal may be taken from any final decision of the state committee by any citizen or taxpayer of the territory involved to the district court of any county in which the proposed new district lies. Such appeal shall be heard promptly and shall be governed by the Wyoming Administrative Procedure Act and the Wyoming Rules of Civil Procedure. * * *"

A school district is not a citizen nor a taxpayer. Its motion for intervention is no more than a petition for judicial review, regardless of the label by which it did get into this proceeding. During the course of the trial held by the district court, it was treated in all respects as an appellant. A school district has no standing in an appeal involving a petition for review of administrative action under the specific terms of the Wyoming School District Organization Law of 1969. A school district cannot do indirectly that which it could not do directly. To prosecute an appeal under the guise of an intervention is an improper application of Rule 24, W.R.C.P. in the presence of a specific statute limiting those who may contest school reorganization. It is interesting to note that the motion to intervene was filed almost a year after the state committee's decision and order. Time for appeal is within 30 days after the final decision of an agency. Rule 72.1(d), W.R.C.P. The back door is not available when the front door is closed.

1. Resigned after oral argument to accept appointment as District Judge, Fourth Judicial District, Wyoming.

2. Chief Justice at the time of approval and filing of the opinion.

 The right of an appeal is a privilege rather than a right.

" * * * It is well settled that, in the absence of a direct constitutional requirement, the right of appeal does not exist unless expressly conferred by statute. The right to have a judgment of an inferior tribunal reviewed by writ of error or appeal is not a natural or inherent right. It pertains merely to the mode of judicial procedure or the remedy. Unless it is guaranteed as a matter of right in the Constitution, the Legislature has power to pass laws not only regulating the mode of proceeding, but limiting the cases in which the right may be exercised. * * *" Mau v. Stoner, et al., 1905, 14 Wyo. 183, 193–194, 83 P. 218, 219.

The legislature has authority to abridge or extend the right of appeal at its discretion and can determine in what cases and under what circumstances appeals may be taken, as well as regulate the manner of appeal. 4 Am.Jur.2d (Appeal and Error) § 6, pp. 536–537.

Intervention by the Wind River Indian Education Association, Inc., a private entity, and various citizens of the Indian community was of a different stripe in that these intervenors were either a private entity or citizens and fit the statutory requirement of "citizens or taxpayers", and there was no special statute which would impose a restraint upon use of Rule 24, W.R.C.P., pertaining to intervention. They were not appealing. Those taking the side of the appellees were more in the nature of amicus curiae.

 The district court improperly permitted and conducted a trial type hearing on issues of a legislative nature in this "non-contested" case. School district reorganization proceedings are non-contested cases. Lund v. Schrader, Wyo.1971, 492 P.2d 202, 209. In Johnson v. Schrader, Wyo.1972, 507 P.2d 814, 817, the court decided that the reorganization process is a delegated legislative function and such factor, along with it being a non-contested case, negative the necessity of a trial type hearing. The court in Johnson, just cited, refused to permit the taking of evidence by the district court, because this is an imposition by the courts upon the legislative function delegated to the county committee and the state committee. If there was any further evidence to have been taken, it should have been remanded to the state agency having that function, and that function after December 20, 1971, as will appear later, rested solely with the county committee. If, after an appropriate hearing on a motion showing the necessity for consideration of further matter or facts, the court found that all pertinent material matter or facts had not received the attention of the administrative agency, then the case should have been remanded to the proper committee authorized to carry on the organization function, to receive and consider the evidence, and revise or confirm its decision, within the authority delegated to it, within its judgment. This delicate relationship between the judicial, executive and legislative departments must be meticulously protected.

Without disturbing the court's views in Lund v. Schrader, supra, or Johnson v. Schrader, 507 P.2d 814, that the School District Organization Law of 1969 does not suggest the holding of trial type hearings before the state or county committees, we must confine ourselves to the facts of those cases, where there was apparently no disputed factual issue. Davis, Administrative Law Treatise, 1970 Supp., § 7.01, p. 301, declares that, "The basic principle is that trial procedure is required for—and only for—issues of fact, not for issues of law, policy, or discretion." We only add that there may be an occasion to use a question, answer, cross-examination and other evidence type of approach to settle a disputed fact—a pivotal statistic, for example.

The transcript of the court hearing consists of a castigation of the State Director of School District Reorganization, authorized by § 21.1–112 to assist the state committee in carrying out its power and du-

ties; testimony of a witness as to the number of Indians in boarding schools, about which there was no dispute; testimony from the project director of the Wyoming Indian High School about its facilities, operation, financing, future plans and ownership of the lands upon which located; and, testimony from a Shoshone Indian who testified about the history of the school system on the reservation and tribal council operation of the reservation, there being one for the Arapahoes and one for the Shoshone Tribe, the Arapahoe's council favoring the state plan, the Shoshones opposing it.

The last mentioned witness pointed up the fact that proposed District 3 did not cover the whole Wind River Indian Reservation. In the northwestern area alone there are 500 to 600 Indian families sending their children to schools outside the proposed Indian school district. This particular Shoshone did not like the arrangement because of the probability that the district would be dominated by the Arapahoe tribe.

The trial judge during the court proceeding further heard the testimony of a superintendent of a school district outside the reservation, to tell about its academic program, counseling program, and, generally, its excellent on-going ability to serve its present area, without being unified; an Indian parent, member of an interested parents' organization, to endorse the proposition that a public school in Lander was better than an Indian school; undisputed evidence about the number of mining claims in Fremont County, to show relative mineral wealth; the principal of a junior high school in Lander, to show the financial situation of several of the districts to justify a shift in the assessed valuation of the Beaver Creek Oil Field at a descending rate; an expert on Indian education, to espouse the wisdom of the state plan (125 pages of a 363-page transcript); an Arapahoe Indian, in favor of the Indian reservation district; and, an Episcopal priest, to explain the deed from his church to the Wind River Indian Education Association,

Inc. and that some Indian children felt "ripped off" in off-reservation public high schools.

All of this information adduced was material for a school organization committee, but not a court except on review of what the organization committee did with it. It was offered and received to "supplement the record." Rule 72.1(h), W.R.C.P., states:

"If, before the date set for hearing, application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material, and there was good reason for failure to present it in the proceeding before the agency, the court in contested cases shall order that the additional evidence be taken before the agency, upon conditions determined by the court. The agency may adhere to or modify its findings and decisions after receiving such additional evidence, and shall supplement the record to reflect the proceedings had and the decision made. Supplemental evidence may be taken by the court in cases involving fraud or involving misconduct of some person engaged in the administration of the law affecting the decision. In all cases other than contested cases additional material evidence may be presented to the court."

While the first Johnson v. Schrader case, Wyo.1972, 502 P.2d 371, 376, held that the only limiting factor for presenting additional evidence in unconstested cases seems to be materiality, it must be kept in mind that the later Johnson v. Schrader case, 507 P.2d 814, 817, wiped out that part of the case and held that a district court should not determine issues of a legislative nature when a state agency is charged with that delegated perspective and function. We reaffirm that position. If there was an authorized agency to which the case could have been remanded, that is what the trial court should have done. All of the evidence it heard was properly for the ears of the agency.

Questions have been raised by appellants that no notice was afforded of any hearing before the state committee or, at least if it was received, it was more accidental than on purpose. The position taken by the state committee is that there need be no notice because the state committee is in a review capacity and since not required by specific statute, need not give notice, or its position is that even though there is no required form of notice, in fact, word was disseminated and all those interested were aware that there was a hearing and they could have been present. In any event, the record indicates that there was apparently no formal type of notice given of any hearing and the matter of notice was on a pretty loose basis. The challenge is, of course, that due process was not afforded before the adoption of the state committee plan.

The school reorganization act does provide for notice and a hearing before the county committees in the formulation of any plan which it may adopt and forward for approval to the state committee. § 21.-1–118(b). When the state committee shifted over to its position of not being an approving agency and became an originating agency, was it required to give notice and opportunity for hearing? No statutory notice was provided for such event. This proposition was not in any of the previous school district cases under the organization act of 1969 because none of them had to do with the state committee in a reorganization-originating role. The query, however, has been settled in Marathon Oil Co. v. Welch, Wyo.1963, 379 P.2d 832, 833, where it was held that statutes authorizing subordinate boards to create and alter school districts are not invalid for failure to require notice and hearing, and a hearing is not necessary where not required by statute.

Section 21.1–113, under the 1969 act, was in the following words:

"If by December 1, 1971, an approved plan has not been filed for any territory in any county or counties, then the state committee is authorized to reorganize such territory into a unified school district or districts or to combine such territory with any contiguous unified district or districts. In such event, the state committee shall by December 20, 1971, designate the number of trustees and the trustee residence areas for such unified school district. The county clerk shall call· an election for electing an initial board of trustees on or before January 10, 1972, as if said unified district had been established under section 112(g) of this chapter". (§ 21.1–112(g))

Chapter 264, S.L. Wyoming, 1971, in its title, described the chapter as "AN ACT to amend and re-enact Subsection (b) of Section 109, Chapter 111, Session Laws of Wyoming, 1969, to include elementary schools, principally located within the Wind River Indian Reservation, in unified school districts." Section 1 of the chapter then goes on to provide that § 21.1–109(b) is amended to read, "The entire state shall be divided into unified school districts, any county which has been delayed by previous statutory exemptions may have until January 1, 1973, to complete its organization." That language is clumsy and not grammatically correct, but understandable.

The state committee wants us to hold that this amends § 21.1–113 by implication and authorizes the state committee to reorganize Fremont County any time after December 20, 1971, and asserts that it was only an insignificant, minor inadvertence on the part of the legislature, to not so state. We are not inclined to accept this invitation to nunc pro tunc read a crystal ball.

Section 22.13, p. 139, Volume 1A, Sutherland, Statutory Construction (Sands, 4th ed.), talks about amendment by implication:

"An implied amendment is an act which purports to be independent of, but which in substance alters, modifies, or adds to a prior act. To be effective, an amendment of prior act ordinarily must be express. Amendments by implication, like

repeals by implication, are not favored and will not be upheld in doubtful cases. * * *"

When doing a post mortem on the demise of the state committee's authority to reorganize a county school system, we must observe that all of § 21.1–113 was permitted to die a natural death. It just quietly expired. The surviving family of the reorganization act is still complete, active and workable. The deadline for reorganization was removed completely from that section and the whole authority for devising a county plan given the county, with the right to approve or reject remaining in the state committee along with its privilege of recommending changes to make a plan acceptable. § 21.1–112.

 The courts must determine legislative intent from statutory language and not conjecture. Mahoney v. L. L. Sheep Co., 1958, 79 Wyo. 293, 302, 333 P.2d 712, 715. Where the language of a statute is plain, unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to rules of statutory construction, and the court has no right to look for and impose another meaning. Druley v. Houdesheldt, 1956, 75 Wyo. 155, 160, 294 P.2d 351, 352, reh. den. 75 Wyo. 155, 296 P.2d 251. Courts will not usurp the power of the legislature by deciding what should have been said. Barber v. State Highway Comm'n., 1959, 80 Wyo. 340, 351, 342 P.2d 723, 725.

 The question may be asked, how can this court declare the state committee out of the business of originating plans and then remand—which it will do—to the Fremont County committee, established pursuant to § 21.1–114, which was given until January 1, 1973, to complete its organization? It did submit its final plan prior to that date, but there has been no approved plan, so it does not have a successor planning committee, as contemplated by § 21.1–134:

"When all of the territory of the state is included in unified school districts, the boards of trustees of the unified districts in each county shall constitute a committee with the powers and duties of the former county committees. Such committee may submit to the state committee plans proposing organization of school districts which conform to the criteria and procedures set forth in this chapter, provided that the time limits provided by this chapter shall not apply to any such proposed further organization."

 Fremont County is the last county in the state not reorganized. Since no successor committee can yet be qualified, then the county committee now in existence will be holding over pursuant to Art. VI, § 16, Wyo.Const.:

"Every person holding any civil office under the state or any municipality therein shall, unless removed according to law, exercise the duties of such office until his successor is duly qualified, but this shall not apply to members of the legislature, nor to members of any board or assembly, two or more of whom are elected at the same time. * * * "

 A county committee is neither a "board" nor an "assembly." A board has a management function. State v. Independent School District, 260 Minn. 237, 109 N.W.2d 596, 601; Commissioners of State Ins. Fund v. Dinowitz, 179 Misc. 278, 39 N.Y.S.2d 34, 38. An "assembly" is a legislative body, as used in the Wyoming Constitution, with full decision-making authority. A "committee" is a subordinate body charged with investigation, considering and reporting to a parent body on a particular subject, leaving the parent body to act. Sacramento Newspaper Guild v. Sacramento County Bd. of Suprs., 263 Cal.App. 2d 41, 69 Cal.Rptr. 480, 486. See Webster. The state committee is in fact a board made up of the state superintendent of public instruction and the State Board of Education (§ 21.1–111), having both management and final authority to act. (§ 21.1–112(g). The county committee can only investigate and recommend.

Ballantyne v. Bower (1909), 17 Wyo. 356, 363, 99 P. 869, 871, approved language from cited cases, that the words "civil office under the state" import an office in which is reposed some portion of the sovereign power of the state, and, of necessity, having some connection with the legislative, judicial or executive department of the government. All officers whose duties are prescribed by general law, however trivial, perform their own particular portion of the business of the state. The levying and collection of taxes are state matters. So are all things connected with the state system of schools, construction and maintenance of public highways, and preservation of the peace; all who have parts to perform in the general scheme are officers holding under the state, if their engagement rises to the dignity of an office, rather than a mere employment.

The county committee members hold an office of responsibility and dignity, even being required to take an oath for the faithful performance of their duties. § 21.1-127. Important legislative functions as before noted, are delegated to them.

This court had no problem in March, 1973, after the statutory deadline, remanding Johnson v. Schrader, 507 P.2d 814, to the county committee to do what it had been directed to do by the trial judge. That action was taken, without comment, by the court.

■ The appellants from School District No. 21 and School District No. 24, being citizens and taxpayers of those districts, ask the court to approve the four-district plan, which had been submitted by the county committee for school district organization, but rejected by the state committee. The court has examined the plans of all those submitted by the county committee and discovers that all are deficient in their findings and conclusions, in that there is a failure to abide by the direction in Pan American Petroleum Corp. v. Wyoming Oil and Gas Conservation Comm'n, Wyo.1968, 446 P.2d 550, 555, and repeated in State Board of Equalization v. Kansas-Nebraska Natural Gas Co., Wyo.1969, 457 P.2d 963. It is insufficient for an administrative agency to state only an ultimate fact or conclusion, but each ultimate fact or conclusion must be thoroughly explained in order for a court to determine upon what basis each ultimate fact or conclusion was reached. The court must know the why. This is extraordinarily important in this particular case because of the mass of factual data, expressions from so many people at the county hearings, plus testimony (10 volumes plus 10 depositions and, when stacked, measured about two feet in height).

It is not an obligation of a reviewing court to dig into all of the detailed information gathered in the comprehensive studies made by the county committee as well as the state committee and determine the basis for an ultimate fact. It is the duty of an administrative agency to point out in its decision how it arrived at its final facts and conclusions. There may or may not be formed, a valid syllogism.

Every one of the plans submitted contain only a statement of the statutory words with a conclusion that the plan meets such criteria. For example, each committee has, only as a finding, stated the statutory language of the first criteria set out in § 21.-1-109, in somewhat the following fashion, "The unified school districts are organized as efficient administrative units considering primarily the education, convenience and welfare of the children." Why? How?

For a further example, it is difficult to reason—now taking a look at the state plan —why proposed District No. 1 should have an assessed valuation of $18,075 per student and proposed District No. 2 would have only $12,967 per student of assessed valuation and still the student in District No. 2 would receive an education equal to that offered by District No. 1. There may be a good explanation, but we do not know what it is.

Nowhere does there appear any explanation of how and why the plan meets the

criteria. This must be set out in order that a reviewing state committee or a court, if the matter should go that far, can make any meaningful analysis and a determination that the plan meets the categories of review set out in § 9–276.32(c) which limits the court to a determination of whether or not:

"(i) The agency acted without or in excess of its powers;

"(ii) The decision or other agency action was procured by fraud;

"(iii) The decision or other agency action is in conformity with law;

"(iv) The findings of fact in issue in a contested case are supported by substantial evidence [by the court; not applicable in this case]; and

"(v) The decision or other agency action is arbitrary, capricious or characterized by abuse of discretion."

The court is undertaking this discussion in a further effort to demonstrate the rule of Pan American, supra. That case was cited in Johnson v. Schrader, 502 P.2d 371, 374, and a warning was then issued that a failure to meet the standards of Pan American would make a school district reorganization determination susceptible to the charge that the committee's order is contrary to law. It can also be stated, as already inferred, that the state plan, which will be aborted by this court, even if it were otherwise lawful, would not meet the standards of Pan American and would be subject to the same criticism as that directed to the county committee plans. Nor will briefs and oral argument substitute for a proper decision and order.

We realize that someone may challenge the necessity of detailed supporting facts for ultimate facts in a non-contested case in the face of § 9–276.28, W.S.1957, 1973 Cum.Supp., of the Administrative Procedure Act, outlining the requirement that in a contested case, " * * * Findings of fact if set forth in statutory language, shall be accompanied by a concise and ex-plicit statement of the underlying facts supporting the findings. * * *" There is no similar requirement in the Administrative Procedure Act for non-contested cases.

That requirement may not exist in some non-contested cases and we do not here attempt to decide what they might be, but in the 1969 School District Organization Law, the county committee has the duty to, as a part of its plan, set out " * * * a summary of the reasons for the plan; * * *". § 21.1–118(c).

To us, this applies the rule of Pan American, supra, and adopts the requirement of § 9–276.28, in school reorganization cases. This was the observation of the court in Johnson v. Schrader, 502 P.2d 371, 374. The plan must show conformity to the statutory criteria of § 21.1–109, and state the reasons the plan conforms not only in that particular, but in order to manifest full compliance with the entire Wyoming School District Organization Law of 1969.

It would seem that by reason of the complexities of Fremont County in its population concentrations, economy, geography, variances of assessed valuation by area, mineral wealth, location of industries, political influences and the presence of an extensive Indian community, it would be a much easier task to satisfactorily explain and justify a one-district plan. With all of these considerations and the inordinate number of unsatisfactory plans, it is like trying to put together a jig-saw puzzle with parts that do not fit. By this observation, we are not trying to turn ourselves into a super county or state committee. As was said in Johnson v. Schrader, 502 P.2d 371, 374, "Let us make it very clear at this point, no law says Goshen County has to be a single county-wide school district", nor does Fremont County.

By the four-district plan proposed by the state committee, District No. 3 would have been made up of three existing districts within the Wind River Indian Reservation,

and embracing about one-third of the geographical area of the reservation. It is occupied predominantly, if not totally, by Indians. Its design is centered around the proposition that it would be tailored for the Indian student and in which would be schools fitted to the unique cultures, language, life-styles, spiritual values and religions of the two reservation tribes. It is the contention of the Wind River Indian Education Association that the high schools in Lander and Riverton are unresponsive to these needs, creating social problems, such as alcoholism, arrests and suicides amongst Indian youth, as well as generating a high drop-out rate. It is asserted that any other plan would amount to coercive assimilation, to the detriment of the Indian student. The plan contemplates complete Indian control, directed to the ways of Indians.

However all that may be, the plan's opponents contend that there is not a proper accredited high school on the reservation and there must be one, before such a district can be organized under the definition of a "unified school district" which "means a district supporting at least grades kindergarten or one through twelve, under the control of one board of trustees and administered by one superintendent of schools, that offers an adequate and integrated educational program." § 21.1–107(c).

It is challenged by appellants that the district would "support" the high school and that in fact an "adequate" high school is not in existence. The title to the land upon which a makeshift high school is located, was transferred by the Episcopal Church to the Wind River Indian Education Association, Inc., with a "right of reverter in the event at any time hereafter the grantee named therein shall cease to use that real property hereinabove described for the purpose of the maintenance of the 'Wyoming Indian High School'." The United States has appropriated money to assist in the construction of an acceptable facility and more is apparently antici-

pated. Much of the cost of educating Indians is borne by the United States under The Indian Education Act of 1972. 20 U. S.C. § 241 et seq. This is and would be available to not only schools on the reservation, but other public schools in which Indians are being educated.

Appellants' argument that the proposed district does not support a high school is overly technical. The huge support of the United States may be an explanation of why an average assessed valuation per student in the reservation district is out of line with other districts, in which case it would not be bad and explained. Nor does the court believe that it is necessary to have an adequate high school completely in existence as long as there are firm arrangements for one to come into being.

There has been no convincing argument made why a board of trustees should not be made up of Indians, if that is the political complexion in the expanse of the district. The court in this connection finally decides that there would be nothing arbitrary or unlawful about providing elective courses and supplemental school services directed to meet the needs of Indians as is done to meet the specialized needs of students other than Indians, but has not been convinced by the state plan that its way of going about it has been satisfactorily explained within its decision and order; nor is the court satisfied from the record that the headquarters must be located on the reservation and must be dominated entirely by Indians without regard to the high standards and controlling statutes by which Wyoming schools are governed. It is not enough that the state committee falls back on the answer that its plan must be accepted because of its expertise in education. We recognize that expertise, but cannot blindly accept the proposal without full justification in its decision and order.

Perhaps, there should be some word about the authority of the State of Wyoming to be establishing a school system on the Wind River Indian Reservation, over

882

which the United States has exclusive jurisdiction. By 25 U.S.C. § 231, the United States authorized states to exercise school jurisdiction on Indian reservations, but it "shall not apply to Indians of any tribe in which a duly constituted governing body exists until such body has adopted a resolution consenting to such application." The court is informed through the briefs, that this authority was given, but it remains somewhat a question as to when and how.

There are two tribes on the reservation, the Arapahoe and Shoshone. In the record appears a resolution of the Shoshone Indian tribe which resolves "that the General Council of the Shoshone people support the Shoshone people of School District No. 21 to reject a unified reservation district of School Districts No. 21, 14, 38 and to preserve the right of Shoshone people to determine their own destiny." By the same resolution, the Shoshone Tribe refused support to the Ethete Resources High School (the Wind River Indian Education Association High School), the controversial school in this proceeding, previously described.

Counsel for the Wind River Indian Education Association in his brief acknowledges that the tribes may withdraw their consent and expel the State. The Shoshone Tribal resolution seems to indicate as much. We need not rule on whether the resolution is in fact a withdrawal of tribal authority if the proposed Indian District No. 3 were to be established. There is a problem of diplomacy facing the county committee, in its future planning. While the case is not in point as to any issue here, Mr. Justice Rehnquist took perceptive notice in U. S. v. Mazurie, — U.S. —, —, 95 S.Ct. 710, 42 L.Ed.2d 706 (decided January 21, 1975), that, " * * * Indian tribes are unique aggregations possessing attributes of sovereignty over both their members and their territory (citing case); they are 'a separate people' possessing 'the power of regulating their internal and social relations . . . .' (citing cases)."

The Joint Business Council of both tribes has endorsed the state committee plan. There is a difference in the nature of the two Councils, however. Each tribe may speak for itself, as the court reads 25 U.S.C. § 231. In any event, the State is only on the reservation trying to set up a school system by the grace of the two tribes.

It is concluded that there is no authority in the state committee or any county committee to set up a separate Indian reservation school district, as done. Art. VII, § 10, Wyo.Const., states that, "In none of the public schools so established and maintained shall distinction or discrimination be made on account of sex, race or color." The word "distinction" contained in this section must be given its ordinary meaning. Webster defines that word as follows: "seeming to distinguish", "setting apart from others", "individualizing", "characteristic", "peculiar", "special". This is a special Wyoming constitutional provision pertaining to schools and does not fall under any general constitutional provision, such as the Fourteenth Amendment to the Constitution of the United States, which is directed toward the equal protection of the laws and under which the many school segregation cases are laid. No distinctive school may be established for Indians, by an agency of the State of Wyoming.

Another constitutional impediment, when applied to the facts, interferes with what the state committee was attempting to do. Art. VII, § 1, commands the legislature to provide for the establishment of a "uniform" system of public instruction. The court observes by the state plan that the combination of existing districts 14, 21 and 38 into the proposed Indian Reservation District No. 3 embraces only a total of 922 square miles. That data comes from an exhibit to the state plan. There are a total of 2,947.7 square miles in the entire Indian reservation (1,886,556 acres divided by 640 acres per

square mile). Federal and State Indian Reservations, U. S. Department of Commerce, January, 1971, p. 415. Those Indians residing on the remaining portion of the reservation will be served for their education by the other three districts. If the arguments of the Wind River Indian Education Association, Inc. and the state committee that there is a unique requirement for a separate Indian school district operated by and for Indians are valid, there is no explanation as to why the same principle should not be applied to the remaining portion of the Indian reservation, in which undisputed court testimony discloses there are several hundred Indian families. The decision is arbitrary in that respect.

In this same connection, the state committee has attempted to amend the State Education Code, which only the legislature may do. There is a special provision of the state plan which provides that any Indian student in District No. 3 may, at such student's choice and selection, attend a high school other than that operated by the proposed Indian district, upon the payment of tuition by that Indian school district. This does not solve the problem, however, because there is no uniform provision applying to those Indians residing in other school districts who wish to enroll in the Indian schools. The reciprocal arrangement, however, would not be lawful, either, but it further demonstrates the nonuniformity and arbitrariness of the plan, even if lawful, which it is not.

The Education Code of Wyoming governs enrollment of school district non-residents:

"§ 21.1–67. (a) Any district which does not maintain a high school shall pay tuition, in addition to transportation or maintenance, for any child resident therein who has successfully completed the course offered therein and desires to attend high school, at any public school within or without the state which the board may designate in the best interests, welfare and convenience of the child.

"(b) The board of trustees of any school district within the state which does maintain a four-year high school shall admit, upon payment of tuition, pupils of districts which do not maintain a four-year high school; provided, that nothing in this section shall be construed to require a district to admit non-resident pupils, when to do so would overcrowd the facilities of the admitting district or in any way work a definite hardship upon the educational program offered by the admitting district."

"§ 21.1–68. (a) The board of trustees of every school district within the state may pay tuition from the funds of the district for any pupil resident therein who desires to attend school in another district when attendance in such other district would be more convenient or is desirable because of the services available in such other district.

"(b) Any district within the state shall admit pupils resident in other districts of the state, except when such admission shall overcrowd the classrooms of the admitting district. The cost of tuition for such pupil may be paid by the district in which the pupil resides from the funds of such district, and shall be at least the actual cost per pupil for operation of the admitting school for the preceding school year; provided, that no district shall be liable for such payment unless it has previously given permission, in writing, to the enrollment of such pupil."

The state committee cannot willy-nilly depart from the Education Code and direct an unlawful arrangement. As indicated, the schools in which the Indians would enroll, have a voice. The statutes are clear and unambiguous and need not be construed.

It is suggested that the Wyoming State Legislature, now in session, may wish to consider this opinion and review the Wyoming School District Organization Law of 1969. It must be noted that § 21.1–113, the

authority of the county clerk to call an election for electing the initial board of trustees upon a state plan, expired on January 10, 1972. By this paragraph, the court is not directing the Wyoming State Legislature to do anything in this connection or giving it directions as to how to do it, because that is the business of that branch of government. This court has no intention of interfering with the work of that great body.

Reversed and remanded with instructions.

The case is remanded to the Fremont county committee to continue its work in reviewing its previous plans, taking into consideration new facts, along with the sense of this opinion, and submit a plan of organization to the state committee for approval or rejection.