Melvin STEVENS and Phyllis Stevens,
Appellants (Plaintiffs below),

v.

ROCK SPRINGS NATIONAL BANK, a
Bank Corporation chartered under the
United States banking statutes; Adams
Sales, Incorporated, a Wyoming Corpo-
ration; and Redman Industries, Incor-
porated, a Foreign Corporation doing
business in Wyoming, Appellees (De-
fendants below).

No. 4801.

Supreme Court of Wyoming.

April 21, 1978.

Juan L. DeHerrera, DeHerrera & Whynott, Cheyenne, signed the brief and Philip P. Whynott, Cheyenne, appeared in oral argument on behalf of appellants.

Ted Simola, Cheyenne, signed the brief and appeared in oral argument on behalf of appellee, Adams Sales, Inc.

Gary M. Greenhalgh, Greenhalgh & Bussart, Rock Springs, signed the brief and appeared in oral argument on behalf of appellee, Rock Springs Nat. Bank.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

RAPER, Justice.

By this appeal, plaintiffs-appellants challenge the summary judgment entered by the district court dismissing with prejudice their complaint for damages, based on an alleged denial of rights as secured by the Wyoming Uniform Consumer Credit Code, hereinafter UCCC. This is the first case in which we have been called on to consider that Act. In urging reversal, appellants assert: (1) that the trial court erred in granting appellees-Rock Springs National Bank (hereinafter Bank) and Adams Sales, Inc. (hereinafter Adams) motions for summary judgment; (2) that the trial court erred in denying appellants' motion to strike paragraph 7 of the affidavit of Thomas J. Kos. We shall affirm the district court.

There is no dispute about the evidentiary facts or any inferences which may be properly drawn from the circumstances. Motions for summary judgments by the Bank and Adams were therefore procedurally proper. Rule 56, W.R.C.P. On July 19, 1971, plaintiffs signed an agreement with defendant Adams for the purchase of a 1971 mobile home, manufactured by Redman Industries, Inc., another defendant (hereinafter Redman), under which agreement the home would be financed through the Bank. A security agreement and financing statement on the Mobile Home, as well as a collateral and installment note, were then executed between plaintiffs and the Bank on forms supplied by the Bank to Adams. Adams was paid by the Bank the cash price of the mobile home, as reflected by the purchase agreement (plus insurance and recording costs) but Adams did not appear as a party to either the security agreement and financing statement or the collateral and installment note. Adams received no fees from the Bank nor was the installment note or financing statement discounted by Adams to the Bank.

The mobile home was received from Redman by Adams sometime prior to July 30, 1971, and delivered to plaintiffs on that date. The fact that the mobile home had been damaged while in transit from Redman, according to affidavits in the file, was not known to employees of Adams when the mobile home was delivered to plaintiffs but was discovered after it had been set up.

Originally, a cause for violation of the Federal Truth in Lending Act was filed with a companion case in the United States District Court for the District of Wyoming. In response to a motion for summary judg-

ment, both cases were dismissed by the United States District Court and the dismissal, as to the same plaintiffs as here, affirmed by the United States Tenth Circuit Court of Appeals for the reason that the one-year statute of limitation prescribed by 15 U.S.C. § 1640(e) had run. *Stevens v. Rock Springs National Bank,* 10 Cir. 1974, 497 F.2d 307, appeal after remand, *Hinkle v. Rock Springs National Bank,* 10 Cir. 1976, 538 F.2d 295. Plaintiffs then filed a complaint in Sweetwater County (subsequently transferred to Carbon County), alleging violation of the UCCC, § 40–2–403, W.S.1957, 1975 Cum.Supp.,[1] for breaches of express and implied warranties, and fraud in the sale of a damaged mobile home. Following remand of a prior appeal by this court for failure of the order appealed from to comply with Rule 54(b), W.R. C.P.,[2] the summary judgment here appealed from in favor of the Bank and Adams was entered. Rule 54(b) has now been complied with, by a determination of the trial judge that there is no just reason for delay and his direction that a final judgment be entered. There still remain in the district court for trial, plaintiffs' causes of action against Adams and Redman for fraud and breach of warranty.

■ In granting appellees' motions for summary judgment, the trial court dis-

missed plaintiffs' complaint against the Bank as to all causes of action and the complaint against Adams as to cause of action one, dealing with alleged violations under the UCCC. Although the plaintiffs have requested reversal of the trial court's decision as to all causes of action filed against the Bank, neither authority nor discussion has been presented in their brief to support their assertions, save as concerns cause one, violation of § 40–2–403, UCCC, supra. In light of this total lack of argument and authority on the remaining causes, appellants' request for their reversal does not merit consideration on appeal. *First National Bank of Thermopolis v. Bonham,* Wyo.1977, 559 P.2d 42; *Matter of Estate of Morgan,* Wyo.1977, 568 P.2d 892.

■ In urging reversal of the summary judgment entered as to causes of action for both the Bank and Adams, as stated, appellants assert that as shown by the affidavits filed, both Adams and the Bank violated, in the transaction herein, the UCCC prohibition against the use of negotiable instruments in consumer credit sales. Section 40–2–403, UCCC, supra. In support thereof, plaintiffs cite the Regulation Z definition of credit sales, 12 C.F.R. 226.2(n),[3] yet at the same time fail to note that under the Wyoming UCCC, a credit sale is also specifically defined, § 40–2–104, UCCC,[4] although

1. Section 40–2–403 provides:
   "In a consumer credit sale or consumer lease, other than a sale or lease primarily for an agricultural purpose, *the seller or lessor may not take a negotiable instrument other than a check as evidence of the obliation [obligation]* of the buyer or lessee. A holder is not in good faith if he takes a negotiable instrument with notice that it is issued in violation of this section. A holder in due course is not subject to the liabilities set forth in the provisions on the effect of violations on rights of parties (section 40–5–202) and the provisions on civil actions by administrator (section 40–6–113)." (Emphasis added.)

2. On an unpublished order of this court, made on its own motion.

3. Regulation Z was published under that designation in the Federal Register. It has since become a part of the Code of Federal Regulations, cited as 12 C.F.R., Part 226, issued under 15 U.S.C., §§ 1601–1605, popularly known as the Federal Truth in Lending Act of the Con-

sumer Credit Protection Act. The regulations may also be found in 15 U.S.C.A., following § 1681t, beginning at p. 615. Section 226.2(n), (226.2(t) under the 1977 revision), defines credit sale as follows:
   "(t) 'Credit sale' means any sale with respect to which consumer credit is extended or *arranged* by the seller. The term includes any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or for no other or for a nominal consideration has the option to become, the owner of the property upon full compliance with his obligations under the contract." (Emphasis added.)

4. Section 40–2–104 provides:
   "(1) Except as provided in subsection (2) 'consumer credit sale' is a sale of goods, services, or an interest in land in which

not as broadly as in the federal version. The UCCC definition varies from the federal definition, by a particular pertinent to this case, in that the Wyoming Act does not encompass a seller who "arranges" a credit sale.

Even assuming for the purposes of disposition of this case only, that under either or both definitions what transpired herein was a consumer credit sale, neither the Bank nor Adams have, strictly speaking, acted improperly or illegally under either the Federal Truth in Lending provisions nor the Wyoming UCCC. There is no evidence tendered by the plaintiffs that Adams "arranged" the credit advanced by the Bank directly to plaintiffs. The Bank did no more than furnish forms to Adams, to be completed by the plaintiffs. The Bank is located in Rock Springs, Wyoming; Adams is located at Green River, Wyoming. There is no indication that Adams and the Bank were doing anything but acting independently, Adams, as a seller, the Bank, as a lender. As far as the UCCC is concerned, that would have no bearing anyway, because "arrangers" are not covered. In fact, a prohibition against negotiable instruments in consumer credit sales is not even discussed within the Truth in Lending Act nor under "Regulation Z." The UCCC, enacted by almost all states, including Wyoming, is to allow state rather than federal control of credit transactions,[5] specifically dealing with prohibitions with respect to negotiable instruments.

Section 40–2–403 is Section 2.403 of the Uniform Consumer Credit Code. That section in its first sentence simply abrogates the right of a seller to take a negotiable document and assign it to a lender—a bank or finance company, usually. There had been developing for some years a legislative and judicial trend favoring avoidance of holder-in-due-course protection for financial institutions purchasing consumer paper.[6]

"(a) Credit is granted by a person who regularly engages as a seller in credit transactions of the same kind.
"(b) The buyer is a person other than an organization.
"(c) The goods, services or interest in land are purchased primarily for a personal, family, household, or agricultural purpose.
"(d) Either the debt is payable in installments or a credit service charge is made, and
"(e) With respect to a sale of goods or services, the amount financed does not exceed $25,000.
"(2) Unless the sale is made subject to this act [§§ 40–1–101 to 40–9–103] by agreement (section 40–2–601), 'consumer credit sale' does not include
"(a) A sale in which the seller allows the buyer to purchase goods or services pursuant to a lender credit card or similar arrangement, or
"(b) Except as provided with respect to disclosure and debtors' remedies (section 40–5–201), a sale of an interest in land if the credit service charge does not exceed 10 percent per year calculated according to the actuarial method on the unpaid balances of the amount financed on the assumption that the debt will be paid according to the agreed terms and will not be paid before the end of the agreed term.
"(3) A credit sale primarily for agricultural purposes, which is secured by an interest in land and in which the amount financed exceeds twenty-five thousand dollars ($25,000.00), is not a consumer credit sale and is exempt from the provisions of W.S. 40–1–101 through 40–9–103."

5. 15 U.S.C.A., § 1633, provides exemption for State-regulated transactions as follows:
"The Board shall by regulation exempt from the requirements of this part any class of credit transactions within any State if it determines that under the law of that State that class of transactions is subject to requirements substantially similar to those imposed under this part, and that there is adequate provision for enforcement."
(The "Board" is the Board of Governors of the Federal Reserve System.)
Effective November 6, 1972, the Board by § 226.12(f) of Regulation Z exempted the State of Wyoming from the requirements of Ch. 2 of the Truth in Lending Act with some exceptions. 37 F.R. 24105, November 14, 1972.

6. See 29 Ohio State Law Journal 667, "Another 'Assault Upon the Citadel': Limiting the Use of Negotiable Notes and Waiver-of-Defense Clauses in Consumer Sales"; Annotation, 44 A.L.R.2d 8, "Transferee of commercial paper given by purchaser of chattel and secured by conditional sale, retention of title, or chattel mortgage, as subject to defenses which chattel purchaser could assert against seller"; *Unico v. Owen,* 1966, 50 N.J. 101, 232 A.2d 405. See also "Legislative Comment, The Uniform Consumer Credit Code", VII Land and Water Law Review 663, 682, Gary J. Fisher, Douglas C. Madison and Micheal E. Warren.

That trend came about because of what was visualized to be the basic unfairness between the economic strength of the merchant and the resources of a financial institution available to him as against the more or less helpless householder, whose only remedy was withholding payment for faulty merchandise when purchased on an installment basis. The seller may have been financially invulnerable and the lender could hide behind the fictional defense of holder in due course.[7] More often than not, the lender could satisfy the requirements. Abuses led to the UCCC which by a pragmatic process deprived the seller the right to take negotiable paper and thus avoid the problem arising.

■ As can be readily seen, § 40–2–403, UCCC, supra, prohibits only a *seller or lessor* from taking a negotiable instrument as evidence of the obligation created. No mention is made of any other party, and in the facts before us, no argument has been raised that the Bank is either a seller or lessor. As noted by the United States District Court of Wyoming in its Findings of Fact and Conclusions of Law [8] as to the Bank, leading to dismissal of plaintiffs' federal complaint, the Bank is a "lender" governed by the provisions of Article 3 of the UCCC, and nowhere within that Article is there a similar prohibition. The Bank can accept negotiable paper. Section 40–3–101, et seq. The far-reaching legislative intention, which appellants urge, we find has not been expressed in the statute, and because of its breadth cannot be reached by implication.

■ Courts will not enlarge, extend, expand or stretch a statute to matters not falling within its express provisions. *Lo Sasso v. Braun,* Wyo.1963, 386 P.2d 630. Nor can we look for and impose another meaning. *Geraud v. Schrader,* Wyo.1975, 531 P.2d 872, cert. den. *Wind River Education Association, Inc. v. Ward,* 423 U.S. 904, 96 S.Ct. 205, 46 L.Ed.2d 134. We conclude, therefore, that under the provisions of the UCCC at the time the transaction herein occurred, appellee-Bank had committed no violation.

■ As concerned appellee-Adams, although it was clearly the "seller" in the transaction herein, it was neither a secured party nor any kind of party in interest to the financial arrangements made for the purchase of the home. It was the appellee-Bank only which was listed on the security agreement and note as secured party, therefore, it, not Adams, was the "taker" of the negotiable instrument in this situation, Adams simply aiding in completing and forwarding the papers involved to the Bank. Under this set of facts, Adams, as well, did not violate the Wyoming UCCC.

■ The plaintiffs attempt to incorporate 12 C.F.R., § 226.6(d),[9] into the UCCC

---

7. To qualify as a holder in due course, § 34–3–302, W.S.1957, 1975 Cum.Supp., states:
    "(1) A holder in due course is a holder who takes the instrument
        "(a) for value; and
        "(b) in good faith; and
        "(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.
    "(2) A payee may be a holder in due course.
    "(3) A holder does not become a holder in due course of an instrument:
        "(a) by purchase of it at judicial sale or by taking it under legal process; or
        "(b) by acquiring it in taking over an estate; or
        "(c) by purchasing it as part of a bulk transaction not in regular course of business of the transferor.

"(4) A purchaser of a limited interest can be a holder in due course only to the extent of the interest purchased."
This court recognized the rights of holders in due course at the common law and previous legislation, Key Nos. 327–384, Bills and Notes, West's Wyoming Digest, for cases.

8. Incorporated as a part of the record in this case.

9. 12 C.F.R., § 226.6(d) provides:
    "(d) If there is more than one creditor or lessor in a transaction, each creditor or lessor shall be clearly identified and shall be responsible for making only those disclosures required by this Part which are within his knowledge and the purview of his relationship with the customer or lessee. If two or more creditors or lessors make a joint disclosure, each creditor or lessor shall be clearly identified. The disclosures required under

and the regulations promulgated by the administrator of the Wyoming Act. That is the so-called "arrangers" provision applicable to disclosures, which creates a liability [10] on the part of a seller, who actively brings together the lender and the debtor, in other words as here, the Bank and the plaintiffs. There is a close association of pertinent dates in the case before us. The UCCC became effective July 1, 1971. The transaction with which we are dealing took place on July 19, 1971, and the regulations under the Wyoming Act were adopted in August, 1971, as conceded by the plaintiffs. On the date of the transaction then, neither the UCCC nor any regulation imposed any liability on a seller who arranged a credit transaction. While § 40–1–102(2)(f), UCCC, declares that an underlying purpose of the Act is "[t]o conform the regulation of consumer credit transactions to the policies of the Federal Consumer Credit Protection Act; * * *" and § 40–6–104(3), UCCC, requires the administrator to keep the "administrator's rules in harmony with the Federal Consumer Credit Protection Act" and regulations prescribed under it, neither the Federal Act nor regulations prescribed under it were incorporated by reference into the UCCC.

Even if the federal regulations had been adopted, the "arranger" regulation, cited by plaintiffs, applies to disclosures. The plaintiffs do not claim a failure to disclose but claim a violation of § 40–2–403, UCCC, to which that regulation is irrelevant. While the federal regulation, § 226.2(n), supra, also extends the definition of credit sale to "arrange[rs]", § 40–2–104, UCCC, supra, does not.

There was a twilight zone when there were no regulations under the Wyoming UCCC to conform it to the federal act. While we need not decide the point, it would appear that during that period, before approval on November 6, 1972, by the Federal Board, with respect to plaintiffs' claim, the federal law and regulations would obtain and relief would be available in the federal courts. Plaintiffs proceeded on that course but were out of time so their remedy in that direction has been exhausted.

Plaintiffs' second and final basis for reversal alleges error in the trial court's refusal to strike, upon their motion, paragraph 7 of the affidavit of Thomas J. Kos, assistant cashier and installment loan officer for the Bank. Plaintiffs' motion alleged that paragraph 7 stated both conclusions of law and fact and, therefore, improperly invaded the province of the court and jury. In light of our conclusion, affirming the trial court's grant of summary judgment, as well as the fact that from the judgment it does not appear the trial court's decision relied to any extent upon the allegedly improper statement, we perceive no reason to deal with this issue and decline to do so.

Nor do we need to decide whether plaintiffs' claim is res judicata because of the judicial disposal in the federal courts (a question raised by Adams and the Bank) because there is no claim. This case is simply one of an absence of pertinent UCCC statutes and regulations under which plaintiffs can proceed.

Affirmed.

paragraphs (b) and (c) of § 226.8 shall be made by the seller if he extends or *arranges* for the extension of credit. Otherwise disclosures shall be made as required under paragraphs (b) and (d) of § 226.8 or paragraph (b) of § 226.15." (Emphasis added.)

10. The effect of violations on the rights of parties is, amongst others, covered by § 40–5–202, UCCC:

"(1) If a creditor has violated the provisions of this act [§§ 40–1–101 to 40–9–103] applying to certain negotiable instruments (section 40–2–403), or limitations on the schedule of payments or loan term for supervised loans (section 40–3–511), the debtor is not obligated to pay the credit service charge or loan finance charge, and has a right to recover from the person violating this act or from an assignee of that person's rights who undertakes direct collection of payments or enforcement of rights arising from the debt a penalty in an amount determined by the court not in excess of three times the amount of the credit service charge or loan finance charge. No action pursuant to this subsection may be brought more than one year after the due date of the last scheduled payment of the agreement with respect to which the violation occurred."